VASCULAR AND GENERAL SURGICAL ASSOCIATES, LTD., *et al.*, Plaintiffs-Appellees, v. DAVID A. LOITERMAN, Defendant-Appellant.

First District (2nd Division)   No. 1—90—3130

Opinion filed August 25, 1992.

2

Puchalski, Keenan & Reimer (Joseph D. Keenan III, of counsel) and Clousson & Associates (J. Paige Clousson, of counsel), both of Chicago, for appellant.

Neal, Gerber & Eisenberg, of Chicago (Stephen Fedo and Andrew G. Neal, of counsel), for appellees.

JUSTICE McCORMICK delivered the opinion of the court:

Defendant, Dr. David Loiterman, appeals from the trial court's judgment confirming an arbitrator's award to defendant's former employer, plaintiff Vascular and General Surgical Associates (VGSA), of an injunction enforcing a covenant not to compete.

On June 3, 1986, defendant entered into an employment agreement with VGSA, a corporation entirely owned by plaintiff Dr. Kirit Antani, in which defendant agreed to practice vascular and general surgery for VGSA for an initial term of 23 months, until May 31, 1988. Under the agreement, the parties were to begin negotiations for renewal of the contract a year before the initial term ended. The agreement set forth formulas for defendant's salary in each of the following nine years if the agreement were renewed, and a formula for the price of 50% of VGSA's stock, which defendant agreed to purchase if the agreement were renewed.

The agreement also included a covenant not to compete, which provided:

"(a) *** following termination of this Agreement, [defendant] will not, for a period of two (2) years, engage in the practice of vascular surgery or offer any related service on his own behalf at

MacNeal Memorial Hospital, La Grange Community Memorial General or Oak Park Hospitals, as the employee of another or in association with others. [Defendant] further agrees that during the term of this Agreement or any extension thereof and for two (2) years thereafter, within a five (5) mile radius of [MacNeal Memorial] Hospital, he will not become a partner in, a stockholder of, a promoter of, or an adviser to any individual, partnership, or corporation other than [VGSA] which shall offer any services or goods of the type now or hereafter offered by [VGSA].

(b) If [defendant] violates this noncompetition covenant and [VGSA] brings legal action for injunctive or other relief, *** the noncompetition covenant shall be deemed to have the duration specified herein, computed from the date the relief is granted ***.

(c) If any court shall determine that the duration or geographical limit of any restriction contained herein is unenforceable, *** the noncompetition covenant *** shall be deemed amended to the extent required to render it valid and enforceable."

The agreement further provided:

"Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration in accordance with the Rules of the American Arbitration Association [(AAA)], and judgment upon the award rendered by the Arbitrator(s) may be entered in any Court having jurisdiction thereof."

Although negotiations for renewal of the agreement commenced as required by the agreement, the parties failed to agree on terms of renewal prior to the expiration of the agreement's initial term. The parties agreed to continue negotiations for renewal with defendant's compensation during negotiations governed by the formula stated in the initial agreement. In April 1989, defendant stopped working for VGSA.

Defendant continued to perform vascular and general surgical procedures at MacNeal, La Grange and Oak Park hospitals, and he established a surgical practice competing with VGSA at offices within five miles of MacNeal. In May 1989, VGSA brought suit for an injunction to enforce the noncompetition clause of the employment agreement. Defendant moved to compel arbitration and stay proceedings in the trial court.

VGSA opposed the motion on grounds that the agreement limited the arbitrator to awarding monetary relief, so the arbitrator could not award the injunction VGSA sought. VGSA argued that the use of the phrases "legal action for injunctive or other relief" and "[i]f any court

shall determine," in sections (b) and (c) of the noncompetition covenant, showed the parties' intention to reserve the issue of the validity of the covenant for the court, and not to submit it to an arbitrator.

Defendant in his reply memorandum pointed out that arbitrators have the power to grant equitable relief, like injunctions, under the rules of the AAA, which are incorporated into the contract. Defendant further stated:

> "Parties to an arbitration clause are presumed to agree that everything necessary to an ultimate decision is within the arbitrator's authority, absent express limit[a]tions on that authority. [Citation.] The parties to an arbitration agreement empower the arbitrator 'to make an award that will fully settle the dispute.' *Hollister, Inc. v. Abbott Laboratories* [(1988)], 170 Ill. App. 3d 1051, [1060,] 524 N.E.2d 1035[, 1040-41]."

On June 6, 1989, the trial court ordered arbitration and stayed court proceedings pending arbitration. Defendant demanded arbitration of the issue of whether VGSA wrongfully terminated his employment after failing to negotiate in good faith. Defendant sought a declaration that the covenant not to compete was not enforceable. In its counterdemand for arbitration, VGSA sought enforcement of the covenant. On November 14, 1989, AAA informed the parties that arbitrator Richard Clemens of Sidley & Austin would hear the case.

One week before the scheduled hearing, defendant filed an antitrust suit in Federal court against Dr. Antani, MacNeal Hospital and other doctors at MacNeal, alleging that beginning in May 1989, the doctors conspired to restrain defendant's practice and force him to resign from MacNeal's staff. Defendant also alleged that in September 1989, the doctors began proceedings to remove him from the staff, and the decision not to reappoint him in October 1989 was, in effect, a boycott of his services.

Defendant then filed in Federal court an emergency motion to stay arbitration, characterizing the issue to be arbitrated as "whether a covenant not to compete *** can be enforced to restrain [defendant's] professional practice as specified in that covenant." VGSA responded that the acts alleged to violate antitrust laws all began after April 1989, and all of the acts pertinent to the arbitration ended in April 1989. Pending decision on the Federal motion to stay arbitration, AAA notified the parties that one of Clemens' partners at Sidley & Austin prepared a memo for MacNeal Hospital in 1987, and the firm did some other work for MacNeal in 1974 and 1978. Clemens had no personal involvement with the work for MacNeal, and MacNeal was not an active client of Sidley & Austin. Defendant objected to Clemens serving as an arbitra-

tor, and VGSA objected to any further delay in the arbitration hearing. AAA reaffirmed the appointment of Clemens.

The Federal court denied the motion to stay arbitration. Defendant subsequently objected to VGSA's counterdemand for arbitration of the issue of enforceability of the covenant not to compete, arguing that the issue necessarily involved interpretation of Federal antitrust law. Defendant also asked Clemens to postpone arbitration of the issues defendant submitted for arbitration pending resolution of the Federal litigation. Clemens denied the request and heard evidence on all issues submitted for arbitration on April 26 and 27, 1990.

Clemens found that the negotiations for renewal of the contract were in good faith and neither VGSA nor Dr. Antani breached the agreement; accordingly, he found "[defendant's] employment with [VGSA] was not wrongfully terminated." Clemens also found that defendant breached the covenant not to compete and that the covenant was "reasonable and enforceable under Illinois law." On June 28, 1990, Clemens ordered defendant not to violate the noncompetition covenant for a period of two years.

Plaintiffs moved to confirm, and defendant moved to vacate the arbitrator's award. The trial court confirmed the award and enjoined defendant from

> "practicing vascular surgery or offering related services at Mac-Neal Memorial Hospital, La Grange Community Memorial Hospital, or Oak Park Hospital, or from conducting a medical practice competitive with that of [VGSA] within a five-mile radius of Mac-Neal Memorial Hospital."

Defendant appealed. On October 29, 1990, the trial court denied defendant's motion for a stay pending appeal, and on November 7, 1990, the appellate court denied a similar motion.

On November 15, 1990, plaintiffs petitioned the trial court for a rule to show cause, alleging that defendant continued to practice vascular surgery at La Grange Community Memorial Hospital in violation of the injunction. Defendant demanded a jury trial on the petition, then moved for a continuance. On January 15, 1991, the court held a bench trial on the petition.

At trial, defendant admitted that he had performed at least nine vascular surgical procedures out of 75 surgeries he had performed at La Grange after November 1, 1990. Defendant testified that he had practiced general surgery, not vascular surgery. Dr. Steven Jensik, a specialist in general surgery, testified for defendant that at West Suburban Hospital, general surgeons perform occasional vascular surgical procedures. The trial court granted plaintiffs' motion to strike Dr. Jensik's

testimony. Defendant sought leave to continue the hearing for presentation of further witnesses on what constitutes a vascular surgery practice.

The court denied the motion and found that defendant violated the order. The court did not order monetary sanctions, but it ordered defendant to "cease from performing any vascular surgery or ***[,] as the order says, related services at the La Grange Community Memorial Hospital," for a period of two years from January 15, 1991, the date of the order in the contempt proceeding. Defendant also appeals from this order.

Defendant argues on appeal that the trial court should have vacated the arbitrator's award because the arbitrator exceeded his authority, the award was contrary to public policy and the arbitrator was biased. Defendant argues that the trial court also erred in finding that defendant violated the injunction.

"[T]he object of arbitration is to avoid the formalities, delays, and expenses of litigation." (*Meharry v. Midwestern Gas Transmission Co.* (1981), 103 Ill. App. 3d 144, 146, 430 N.E.2d 1138, 1140.) Our supreme court "has long recognized the overriding interest in finality which inheres in the submission of disputes to arbitration, and, accordingly, has counseled against judicial review of the merits of arbitration awards." *Board of Trustees of Community College District No. 508 v. Cook County College Teachers Union, Local 1600* (1979), 74 Ill. 2d 412, 418, 386 N.E.2d 47, 49.

Since the arbitration in this case proceeded under the Uniform Arbitration Act (Ill. Rev. Stat. 1989, ch. 10, par. 101 *et seq.*), the courts shall vacate the award if

> "[t]here was evident partiality by an arbitrator appointed as a neutral or corruption in any one of the arbitrators or misconduct prejudicing the rights of any party; [or]
>
> (3) The arbitrators exceeded their powers." (Ill. Rev. Stat. 1989, ch. 10, pars. 112(a)(2), (a)(3).)

Our supreme court has also found that courts have the power to vacate an arbitration award "if it results in the contravention of paramount considerations of public policy." *Board of Trustees*, 74 Ill. 2d at 423-24, 386 N.E.2d at 52.

## I

■ Defendant argues that the arbitrator exceeded his authority by finding that defendant was not wrongfully terminated and by awarding plaintiffs injunctive relief. Defendant contends that in finding that his employment was "not wrongfully terminated," the arbitrator must have

found that defendant was terminated for cause. In his statement of the issue for arbitration, defendant asserted that he was wrongfully terminated in violation of the employment agreement; the arbitrator's finding appears to be no more than the negative of this assertion. The arbitrator did not assert that plaintiffs terminated defendant's employment. The finding is consistent with an assertion that defendant terminated his own employment.

Reviewing courts must exercise "[e]very reasonable presumption *** in favor of the finality and validity of [an arbitrator's] award [citation], and the arbitrator will be deemed to have acted within the bounds of his authority unless the award itself clearly exceeds those bounds." (*Fredman Brothers Furniture Co. v. Retail Store Employees Union, Local 575* (1979), 70 Ill. App. 3d 518, 521, 388 N.E.2d 849, 851.) Defendant's strained interpretation does not overcome these presumptions.

Defendant argues that the arbitrator had no authority, under the arbitration agreement, to impose injunctive relief, essentially restating the arguments VGSA made in opposition to defendant's motion to compel arbitration. Arbitrators have only those powers conferred by the parties' agreement (*Board of Trustees*, 74 Ill. 2d at 419, 386 N.E.2d at 50), but "[t]he arbitration agreement must be given as broad an interpretation as its language will allow" (*Konicki v. Oak Brook Racquet Club, Inc.* (1982), 110 Ill. App. 3d 217, 224, 441 N.E.2d 1333, 1338). An award is sufficiently authorized by an arbitration agreement if authority for the award

"can in some rational manner be derived from the agreement, 'viewed in the light of its language, its context, and any other indicia of the parties' intention.' " *Amoco Oil Co. v. Oil, Chemical & Atomic Workers International Union, Local 7-1, Inc.* (7th Cir. 1977), 548 F.2d 1288, 1294, quoting *Ludwig Honold Manufacturing Co. v. Fletcher* (3d Cir. 1969), 405 F.2d 1123, 1128.

Where a controversy is submitted to arbitration, the arbitrator may make an award that will fully settle the controversy. *Himco Systems, Inc. v. Marquette Electronics, Inc.* (1980), 86 Ill. App. 3d 476, 407 N.E.2d 1013.

"Absent express limitations, the parties are presumed to agree that everything, both as to law and fact, necessary to the ultimate decision is within an arbitrator's authority." *Kalish v. Illinois Education Association* (1988), 166 Ill. App. 3d 406, 409, 519 N.E.2d 1031, 1033.

■ Here, the employment agreement provides that, if defendant violates the noncompetition covenant and VGSA brings legal action for an injunction, the two-year time period of the covenant will begin to run

when relief is entered. The agreement further provides that if "any court shall determine" that the noncompetition covenant is too broad to be enforceable, the covenant shall be narrowed to make it enforceable. The agreement does not explicitly state that only a court has the power to interpret the covenant or to issue an injunction. As defendant pointed out in the trial court, the agreement incorporates the rules of AAA, and those rules state that arbitrators have the power to grant equitable relief. The agreement does not contain the kind of clear, express limitation needed to restrict the arbitrator's authority, especially because the controversy could not be ultimately decided in plaintiffs' favor without injunctive relief. Since the parties agreed to submit to arbitration "[a]ny controversy or claim arising out of or relating to this Agreement, or the breach thereof," the arbitrator had authority to decide whether the covenant was enforceable and to enforce it by injunctive relief.

■ Defendant asserts that the enforcement of a covenant not to compete requires a review of the reasonableness of the covenant in light of both State and Federal law. Defendant misstates the law. Illinois courts, including our supreme court, have repeatedly decided questions of the enforceability of covenants not to compete under Illinois law without considering Federal law, and the courts have imposed injunctions when the covenants were enforceable under Illinois law. See, e.g., Canfield v. Spear (1969), 44 Ill. 2d 49, 254 N.E.2d 433; Torrence v. Hewitt Associates (1986), 143 Ill. App. 3d 520, 493 N.E.2d 74.

Defendant agreed to grant the arbitrator the power to decide the enforceability of the noncompetition covenant under Illinois law and to injunctively enforce the covenant when he signed the employment agreement which included the broad arbitration clause incorporating AAA rules. He gave further evidence of his understanding of that clause when he argued in the trial court in response to VGSA's contention that the arbitrator would not have the power to decide the matter finally and to enforce the covenant injunctively, that "[p]arties to an arbitration clause are presumed to agree that everything necessary to an ultimate decision is within the arbitrator's authority." The arbitrator had the authority to determine the enforceability of the covenant not to compete under Illinois law.

II

Although "public policy strongly supports the principle that an arbitrator's decision is final" (Kalish, 166 Ill. App. 3d at 410, 519 N.E.2d at 1033), "[a]n arbitration award may not stand *** if it results in the contravention of paramount considerations of public policy" (Board of Trustees, 74 Ill. 2d at 423-24, 386 N.E.2d at 52).

■ Defendant contends that the award in this case contravened the public policy against enforcement of restrictive covenants which do not protect a proprietary interest because Dr. Antani did not have a practice at La Grange Hospital. Even if this could be a public policy consideration that is paramount to the policy favoring the finality of arbitration awards, the record before us cannot support defendant's assertion. There is no evidence in the record on appeal concerning the extent of Dr. Antani's practice at La Grange Hospital. Defendant claims that he presented such evidence to the arbitrator, but the record of the arbitration proceeding is not part of the record on appeal.

The restrictive covenant does not, on its face, contravene public policy. Illinois courts have

> "repeatedly upheld covenants not to compete in medical practice cases without making a specific inquiry into whether the plaintiff has demonstrated a protectable business interest. Notwithstanding the appellate court decisions which have carefully scrutinized whether the plaintiff has shown a protectable interest in cases outside the medical practice area, the Illinois supreme court's consistent enforcement of such covenants in the medical professional field, where the durational and geographic scope is reasonable, demonstrates its recognition that a professional's medical practice is a protectable business interest." (*Retina Services, Ltd. v. Garoon* (1989), 182 Ill. App. 3d 851, 856, 538 N.E.2d 651, 653.)

Defendant does not contend that the covenant was unreasonable in duration or geographic scope.

In *Canfield v. Spear*, a doctor signed an employment contract in which he agreed not to practice medicine within 25 miles of Rockford for three years after the employment terminated. He opened an office in Rockford shortly after terminating his employment under the contract. Our supreme court held that the noncompetition covenant was enforceable, stating:

> "Nor is the contract injurious to any legitimate interest of the public. Defendant can be as useful to the public at some other place in the State as he can in Rockford, and the health of persons elsewhere is just as important." (*Canfield*, 44 Ill. 2d at 52, 254 N.E.2d at 435.)

Similarly, because the covenant at issue in this case does not unreasonably restrict the territory of defendant's practice, nor does the restriction have an unreasonable duration, there is nothing in the record to show that the covenant contravenes public policy.

### III

█ Defendant next contends that the award must be vacated because of the evident partiality of the arbitrator. (Ill. Rev. Stat. 1989, ch. 10, par. 112(a)(2).) "[T]he alleged bias of an arbitrator must be shown with clear and convincing evidence, not that which is remote, uncertain, or speculative." *Kalish,* 166 Ill. App. 3d at 410, 519 N.E.2d at 1034.

The arbitrator, Richard Clemens, worked for Sidley & Austin, a law firm which did some work for MacNeal Hospital in 1974, 1978 and 1987. MacNeal Hospital was not a party to the arbitration and had no financial interest in the decision. Clemens had not performed any work for MacNeal, and MacNeal was not a current client of Sidley & Austin. Defendant has not presented clear and convincing evidence of bias.

### IV

█ Finally, defendant contends that the trial court erred in finding that he violated the injunction by performing nine vascular surgical procedures at La Grange Hospital between November 1, 1990, and January 15, 1991. Defendant argues that performing nine procedures does not constitute the "practice" of vascular surgery, and the order enjoined him from only practicing vascular surgery. The performance of a few isolated procedures can constitute practice in violation of an injunction against medical practice. (See *People v. Spounias* (1959), 20 Ill. App. 2d 184, 155 N.E.2d 326.) The trial court properly construed its order to find that defendant violated the injunction by performing nine vascular surgical procedures.

For the reasons stated above, we affirm the trial court's judgment confirming the arbitrator's award, and we affirm the judgment extending the injunction due to defendant's violation thereof.

Affirmed.

HARTMAN, P.J., and DiVITO, J., concur.