DANVILLE POLYCLINIC, LTD., Plaintiff-Appellant, v. DANIEL DETH-MERS, Defendant-Appellee.

Fourth District    No. 4—93—0785

Argued January 25, 1994.—Opinion filed March 29, 1994.—Rehearing denied May 5, 1994.

LUND, J., specially concurring.

D. Cameron Dobbins (argued), Todd M. Tennant, and Cheryl A. Handy, all of Dobbins, Fraker, Tennant, Joy & Perlstein, of Champaign, for appellant.

Timothy O. Smith, of Smith & Kagawa, of Danville, and Craig M. White (argued), of Wildman, Harrold, Allen & Dixon, of Chicago, for appellee.

JUSTICE GREEN delivered the opinion of the court:

On August 19, 1993, plaintiff Danville Polyclinic, Ltd. (Polyclinic), filed a complaint in the circuit court of Vermilion County against defendant Daniel Dethmers, M.D., seeking injunctive relief and damages. The four-count complaint alleged that (1) Polyclinic is a comprehensive medical services corporation; (2) on or about December 16, 1991, it entered into a contract with Dethmers agreeing to furnish him an office and certain services and he agreed to abide by Polyclinic bylaws and regulations and to practice medicine as an employee of Polyclinic; and (3) Dethmers violated Polyclinic bylaws and regulations and was discharged; and (4) Dethmers then continued to practice medicine in the Danville area in violation of a restrictive covenant in the aforesaid agreement between the parties.

After an evidentiary hearing, the court entered an order on September 1, 1993, denying Polyclinic's request to preliminarily enjoin Dethmers from practicing medicine within 50 miles of Danville. Polyclinic has appealed. (134 Ill. 2d R. 307(a)(1).) It maintains that the court erred (1) in finding that none of the factors necessary for a preliminary injunction were shown; (2) in admitting improper evidence; and (3) in considering improper matters. It asserts that the denial of relief was a breach of discretion by the court. We disagree and affirm.

Two aspects of this case are very significant to our decision. One is that substantial discretion is granted to trial courts in deciding whether to grant a temporary injunction. (*Lonergan v. Crucible Steel Co.* (1967), 37 Ill. 2d 599, 612, 229 N.E.2d 536, 542; *Ron Smith Trucking, Inc. v. Jackson* (1990), 196 Ill. App. 3d 59, 63, 552 N.E.2d 1271, 1275.) This court has applied that rule in affirming the denial of a preliminary injunction sought, as here, to enforce a restrictive covenant in a contract of employment. (See *Lee/ O'Keefe Insurance Agency, Inc. v. Ferega* (1987), 163 Ill. App. 3d 997, 1003, 516 N.E.2d 1313, 1317.) The other aspect of the case is the unusual nature of the agreement between the parties. It was such that the physicians have great independence from Polyclinic. In addition, the purpose of the restrictive covenant contained in the agreement was not to enable Polyclinic to retain patients who were seeing Dethmers, but to keep him with Polyclinic and a related partnership, which was holding title to property, so that he would participate in the financing of a new building.

The facts concerning the contract between the parties were mostly undisputed. Polyclinic was incorporated in 1973 for the purpose of practicing medicine and "all services ancillary thereto." Middlefork partners (Middlefork) was a partnership consisting of

most Polyclinic physicians. Its purpose was to hold title to real estate used by Polyclinic. In 1988, Polyclinic recruited Dethmers to serve as an orthopedic surgeon. He had not previously practiced in the area. Polyclinic guaranteed his salary for the first year and his moving expenses. United Samaritan Medical Center (USMC), which operated a hospital nearby, agreed to reimburse Polyclinic for those payments. After the end of the year, Dethmers became an employee on a salary. At times pertinent here, Dethmers' relationship to Polyclinic was determined by a "Participating Physician Agreement for Services" (Agreement) referred to in the complaint as being entered into in December 1991 but not actually signed by Dethmers until January 1992.

This dispute arises from a noncompetition provision of the Agreement, which states as follows:

> "In the event that [e]mployee of the Polyclinic cease[d] employment or affiliation with the Polyclinic, then, for a period of five years following such event, such person[ ] shall not directly or indirectly solicit any patient or in any other way compete with the Polyclinic for patients within a 50[-]mile radius of the Danville [c]ity [l]imits."

In early 1991, the governing board of Polyclinic began plans to construct a new four-story building to house the clinic.

On April 25, 1991, a Polyclinic shareholders meeting was held, and agreement was reached to send a letter to each shareholder requiring each shareholder to sign a restrictive covenant which stated that "if a physician wishes to leave the Polyclinic but remain in the Danville Polyclinic treatment area to be defined as 50 miles in any direction with the exception of Champaign/Urbana, there will be a penalty of $50,000 per year for five years." Dethmers signed that covenant.

In September 1992, Middlefork acquired land at 707 N. Logan Avenue in Danville, which is where the new building was to be located. In January 1993, Middlefork entered into a construction contract for the design and construction of the new building. The execution of this contract, which called for payment of $5,632,996 for the completion of the building, prompted Polyclinic to take further action to secure from its physicians a promise to pay for the new building. On July 8, 1993, another memorandum was sent to all the physicians requesting that each sign another statement of intent. Defendant was among four physicians who did not execute and return this statement of intent.

On July 27, 1993, the Polyclinic board of directors met and ordered that every physician, except those working at a satellite,

must relocate to the new building upon its completion or face termination. Dethmers continued to refuse to comply with Polyclinic's requests. In July or August 1993, Polyclinic sent another letter to Dethmers requesting him to sign a letter of intent to pay one twenty-sixth of the operating expenses of the new building for an extended period. Defendant refused. Plans for a meeting between Polyclinic and Dethmers fell through, and Dethmers did not comply with the request of the letter.

The Agreement contained a provision stating that an employee may be fired immediately if the employee refused "to faithfully or diligently perform the provisions of his agreement [or] the usual and customary duties of his profession." Purporting to act under this provision, Polyclinic discharged Dethmers effective August 9, 1993. Dethmers then continued to see his patients from a Danville location. Polyclinic brought suit.

The parties do not dispute the general requirements for obtaining a preliminary injunction. As this court stated in *Lee/ O'Keefe*, such a petitioner must establish (1) it has a clearly ascertained right which needs protection; (2) without injunctive relief, it will suffer irreparable damage; (3) it does not have an adequate remedy at law; (4) success of the underlying suit on the merits is likely; and (5) the benefits of granting the preliminary injunction will exceed the injury to the defendant. (*Lee/ O'Keefe*, 163 Ill. App. 3d at 1002-03, 516 N.E.2d at 1317.) The comprehensive memorandum and order filed by the circuit judge indicated he found that none of the five factors above had been established. We need discuss only the factors of the establishment of a clearly ascertained right and the likelihood of success on the merits to conclude that the circuit court did not breach its discretion in refusing a preliminary injunction.

As this court recently stated, the general rule in regard to the validity of restrictive covenants in contracts of employment is that such covenants, if reasonable as to length and area covered, are permissible (1) if the employee obtained confidential information through the job and attempted to use it after the employment terminated; and (2) when the employee's relationship with the customers is nearly permanent and the employee would not have had contact with the customer absent the association with the employer. (*Springfield Rare Coin Galleries, Inc. v. Mileham* (1993), 250 Ill. App. 3d 922, 935, 620 N.E.2d 479, 485; see *Agrimerica, Inc. v. Mathes* (1990), 199 Ill. App. 3d 435, 443, 557 N.E.2d 357, 363; *Lee/ O'Keefe*, 163 Ill. App. 3d at 1004, 516 N.E.2d at 1318.) However, where the restrictive covenant concerns an employee of a professional practitioner, the courts have been generous in upholding the covenant if it is reasonable as to time and area involved.

As Polyclinic points out, the supreme court has most recently spoken on the issue of restrictive covenants given by employee in a professional practice in *Cockerill v. Wilson* (1972), 51 Ill. 2d 179, 281 N.E.2d 648. The court affirmed an injunction which prohibited a veterinarian from practicing for five years within 20 miles of the place of business of his former employer. The court stated:

"In considering this issue we must consider that the interest plaintiff sought to protect by the covenant was his interest in his clients. [Citation.] In bringing the defendant into the association plaintiff was thereby bringing him in contact with a clientele which plaintiff had established over a period of years. Plaintiff was naturally interested in protecting his clients from being taken over by defendant as a result of these contacts. The protection of this asset is recognized as a legitimate interest of an employer." *Cockerill*, 51 Ill. 2d at 184, 281 N.E.2d at 651.

Prior to *Cockerill*, the most recent supreme court case was *Canfield v. Spear* (1969), 44 Ill. 2d 49, 254 N.E.2d 433, where the court upheld a covenant restricting a physician joining a Rockford clinic from practicing medicine within a 25-mile radius of that city for a period of three years after leaving that clinic. The opinion focused upon the reasonableness of the covenant and that the public was not injured by it rather than analyzing the interest of the clinic being protected.

In *Sarah Bush Lincoln Health Center v. Perket* (1992), 238 Ill. App. 3d 958, 963, 605 N.E.2d 613, 617, this court upheld a covenant restricting a director of physical medicine and rehabilitation of a medical center from practicing her specialty in Coles County for a period of one year after her services at the health center were terminated. In holding that a nearly permanent relationship with her patients existed, we cited *Cockerill* and *Canfield* and noted that in *Nationwide Advertising Service, Inc. v. Kolar* (1973), 14 Ill. App. 3d 522, 528, 302 N.E.2d 734, 738, that court had indicated that a nearly permanent relationship with clients was inherent in the professions involved in *Cockerill* and *Canfield*.

As we have indicated, we are concerned with the aspects of the Agreement which make the relationship of the parties here different from that existing in *Cockerill* and *Canfield*. Although the Agreement describes Polyclinic as the employer, and it did pay the physicians a portion of the fees obtained from their services, the Agreement focused upon the services furnished to the physicians by Polyclinic. The Agreement does not seem to create a close relationship between the Polyclinic and the patients of the physicians. The situation did not appear to be such that the patients sought out the services of

Polyclinic with the various doctors applying their expertise to the patients' problems. Dethmers testified that the majority of his patients had not been referred by other Polyclinic doctors. The existence of a near-permanent relationship between the doctors, patients, and Polyclinic would not necessarily arise. A determination by the court that it did not arise would be neither contrary to the manifest weight of the evidence nor contrary to law.

■ The purpose of the restrictive covenant here was also different than in *Cockerill* or *Canfield*. In those cases it was aimed at protecting the employer's relationship with its clients or patients. Here, Jerry A. Cummings, Polyclinic's administrator, testified that the purpose of the restrictive covenant was to keep Dethmers connected with Polyclinic and Middlefork so that enough people would be involved to finance the construction of the new building. This testimony was not refuted. Indeed, it was substantiated by Polyclinic's closing argument. The court's determination that the purpose was accurately described by Cummings was also not contrary to the manifest weight of the evidence.

Absent proof of a near-permanent relationship between Polyclinic and Dethmers' patients and absent a showing that the restrictive covenant was intended to protect Polyclinic's interest in Dethmers' patients, the court's finding that Polyclinic had no protectible interest involved was not contrary to the manifest weight of the evidence. As the question of a protectible interest bore upon Polyclinic's ultimate request for a permanent injunction, the court's determination that the likelihood of Polyclinic's winning on the merits was not good was also supported by the evidence.

The circuit court's memorandum and order emphasizes the issues of protectible interest and likelihood of success on the merits. Accordingly, we need not consider whether the circuit court was correct in also finding the other factors for injunctive relief lacking. Existence of all five factors is necessary to granting of a preliminary injunction, and we are satisfied the court would not have granted a preliminary injunction even if the other three factors were proved.

Polyclinic complains of certain items of evidence being admitted and the court's consideration of some other matters. Although the court discussed some of these matters at some length, no findings were based upon them, and we are satisfied that if any admission of evidence or consideration of an item was improper, it did not affect the decision. The court did state that it concluded that an extreme emergency was necessary to support the request for a preliminary injunction, but we do not agree with Polyclinic's interpretation that the court thought that this issue was a separate item. Rather, we

interpret the court's statement as indicating that the existence of all the required factors amounts to an extreme emergency. This is the holding of *Buzz Barton & Associates, Inc. v. Giannone* (1985), 108 Ill. 2d 373, 386-87, 483 N.E.2d 1271, 1277.

The court admitted testimony of Dethmers that when he signed the Agreement, Cummings told him the restrictive covenant was not binding on him. Other aspects of the negotiations and dealings between the parties were also introduced. This testimony would be inadmissible under the parol evidence rule if offered for the purpose of altering the terms of the Agreement. (See *Courtois v. Millard* (1988), 174 Ill. App. 3d 716, 720, 529 N.E.2d 77, 79.) However, such evidence would bear upon the good faith of Polyclinic in discharging Dethmers. No Illinois cases are directly in point upon whether lack of good faith could bar Polyclinic from injunctive relief. In *Rao v. Rao* (7th Cir. 1983), 718 F.2d 219, 223, the court indicated that Illinois would likely impose such a bar to injunctive relief. Such a rule is supported by language in *Bauer v. Sawyer* (1956), 8 Ill. 2d 351, 361, 134 N.E.2d 329, 334, which stated that an injunction similar to that sought here was proper against a former partner when various requirements were met and the conduct of the remaining parties obtaining injunctive relief "was not *** inequitable" in regard to the rights upon withdrawal of the partner being enjoined.

Plaintiff also cites introduction into evidence by Dethmers of a plan prepared by Polyclinic officials concerning the number of orthopedic surgeons in the Danville area and a statement of the number which were needed. This was admitted on the issue of damage to the public by enforcing the restrictive covenant. Polyclinic objected on the grounds of relevance and lack of foundation. It now contends that it was hearsay. In any event, the document was admissible as an admission of a party opponent, Polyclinic. *Gillson v. Gulf, Mobile & Ohio R.R. Co.* (1969), 42 Ill. 2d 193, 197, 246 N.E.2d 269, 272; M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 802.9, at 609 (5th ed. 1990).

Polyclinic maintains error resulted from consideration by the court of Dethmers' affirmative defense of duress in entering into the Agreement. It cites *Falcon, Ltd. v. Corr's Natural Beverages, Inc.* (1987), 165 Ill. App. 3d 815, 520 N.E.2d 831. There, a preliminary injunction upholding a distributorship was affirmed. An affirmative defense of the defendants was that plaintiff had breached the agreement. The circuit court had refused to hear evidence on that issue. The court upheld that ruling stating that "affirmative defenses may not properly be *resolved* at a preliminary hearing" (emphasis added) and such evidence "[was] not relevant to the present proceeding." *Falcon, Ltd.*, 165 Ill. App. 3d at 820, 520 N.E.2d at 834.

The *Falcon, Ltd.* opinion cited *Dolan v. United Cable Television Corp.* (1981), 96 Ill. App. 3d 734, 422 N.E.2d 15. In support of its theory that affirmative defenses cannot be considered at a hearing on a request for preliminary injunction, Polyclinic cites *Vascular & General Surgical Associates, Ltd. v. Loiterman* (1992), 234 Ill. App. 3d 1, 599 N.E.2d 1246, and *Regional Transportation Authority v. Burlington Northern Inc.* (1981), 100 Ill. App. 3d 779, 426 N.E.2d 1143. All of the foregoing cases hold that in proceedings for preliminary injunctions, affirmative defenses cannot be *resolved*. They do not hold that evidence concerning affirmative defenses cannot be considered in determining the likelihood of the plaintiff prevailing.

As we find no substantial impropriety in the conduct of the hearing and matters considered by the court, and the decision was not contrary to the manifest weight of the evidence, we conclude that the court did not abuse its discretion in denying the preliminary injunction. Accordingly, we affirm.

Affirmed.

COOK, J., concurs.

JUSTICE LUND, specially concurring:
I concur that it was within the discretion of the trial court to deny a *temporary injunction*. The portion of the decision relating to the unusual nature of the agreement between the parties causes concern.

As pointed out in *Sarah Bush* (238 Ill. App. 3d at 963, 605 N.E.2d at 617), a protected interest is present when there is a near-permanent relationship with the clientele. This relationship status is equally as important to Danville Polyclinic as it was to Sarah Bush. It is not unreasonable to suggest that many of Dr. Dethmer's patients came to him because of his association with Polyclinic. Perhaps the evidence will show many of those patients were referrals from other physician members of Polyclinic.

It does not take much imagination to realize that medical clinics consist of more than a group of doctors. Buildings, equipment, and non-doctor personnel are necessary. Advertising is necessary. In summary, it is safe to suggest substantial capital expenditures are required and substantial administrative expenses are ongoing. These same factors exist in sole proprietorships, like that present in *Cockerill*.

The majority opinion appears to suggest that Danville Polyclinic's cause of action is without merit. Such a prejudgment (before a full evidentiary hearing) is, in my opinion, erroneous.

Perhaps Danville Polyclinic's expansion and resulting requests for financial assurances did void the restrictive covenant—and perhaps not. I do recognize that moving into new facilities may be necessary and beneficial to physicians and patients. I suggest that what the restrictive covenant protects may well be the financial resources of all those practicing in the clinic.

Illinois, as well as most jurisdictions, has long recognized that reasonable restrictive covenants involving medical practitioners will be enforced by equitable relief. (See *Linn v. Sigsbee* (1873), 67 Ill. 75; *Ryan v. Hamilton* (1903), 205 Ill. 191, 68 N.E. 781; *Storer v. Brock* (1933), 351 Ill. 643, 184 N.E. 868; *Bauer*, 8 Ill. 2d 351, 134 N.E.2d 329; 17 C.J.S. *Contracts* §§ 245, 246, 247, at 1121, 1122, 1124 (1963).) Some cases discuss "patients" as being the point of interest. We must not let this smoke screen obscure our judgment. Like it or not, it is money that is important. Money pays bills, supports families, and buys luxuries. It also provides business settings and opportunities. Better facilities can attract more customers.

The hearing for preliminary injunction was just that—a preliminary hearing. Plaintiff should have the opportunity to proceed to full hearing, unburdened by an appellate opinion suggesting how the trial court should use *that court's* discretion.