11 June 1999

NO. 4-99-0127

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

PRAIRIE EYE CENTER, LTD., a ) Ap­peal from the

Professional Service Corporation, ) Cir­cuit Court of

f/k/a CENTRUM EYE CENTER, LTD., ) Sangamon Coun­ty

Plaintiff-Appellant, ) No. 99MR13

v. )

PATRICK J. BUTLER, M.D., ) Hon­orable

Defendant-Appellee. ) Thomas R. Appleton,

) Judge Presid­ing.

PRESIDING JUSTICE KNECHT delivered the opinion of the court:

In this interlocutory appeal, plaintiff, Prairie Eye Cen­ter, Ltd. (Prairie), seeks reversal of the trial court's order grant­ing in part its mo­tion for a pre­limi­nary in­junction.  Prai­

rie contends it is entitled to complete relief and to force de

fendant's compliance with the cove­nant-not-to-com­pete clause of the parties' em­ploy­ment agree­ment.  We re­verse and remand with direc­tions.

BACKGROUND

Defendant, Patrick J. But­ler, is an ophthalmologist who specializes in the treatment of glaucoma.  In Feb­ru­ary 1997, But­

ler en­tered an em­ploy­ment agree­ment with Cen­trum Eye Cen­ter, Ltd.  Later that year Centrum Eye Center changed its name to Prai­rie Eye Cen­ter and the parties executed a second iden­tical agree­ment.  For three years prior to his em­ploy­ment with Prairie, Butler main­tained a clini­cal practice at the South­ern Illinois Uni­versi­

ty School of Medi­cine (SIU).  

The employment agreement between Butler and Prairie con­tains the fol­low­ing cove­nant not to com­pete:

"Upon the expiration or termination of this Agreement, employee covenants that he will not, for a period of two (2) years after expiration or termination, engage in, be associated with or have a financial interest in any medical practice or ophthalmology practice, either directly or indirectly, as employ­er, employee, principal agent, indepen­

dent contractor, consul­tant, partner, stock­

holder, creditor in any other capacity, at any location(s) within Sangamon County, Illi­

nois[,] or within ten (10) miles of Hillsboro, Illinois[,] and ten (10) miles of any branch office of Employer. * * * Employee acknowl­edges that Employer has a valid, [protectible] interest in its medical and oph­thalmology practice, and that the duration and geograph­ic scope of this cove­nant are reasonable to protect that inter­est."  

In December 1998, Butler informed Prairie of his inten­

tion to terminate his employment and establish a practice in Spring­field, Illinois.  Butler opened an office approxi­mate­ly two miles from Prairie's Spring­field location.  

In January 1999, Prairie filed a complaint in the cir­

cuit court seeking declaratory relief, permanent injunctive re­

lief, and pre­liminary injunctive relief.  By its claim Prairie sought to enjoin defendant from (1) practicing medi

cine/ophthalmology at any loca­tion within Sangamon County or within 10 miles of its branch offic­es in Hillsboro, Girard, Rushville, Beardstown, Lin­coln, and Decatur; (2) hav­ing any asso­

ciation with, or in­ter­est in, a prac­tice in the re­strict­ed area; (3) solic­iting Prairie's pa­tients; and (4) so­licit­ing Prairie's em­ploy­ees.  Prairie also sought reasonable attorney fees and any other relief deemed proper by the court.

Two days later, the trial court entered an order grant­

ing the injunc­tion in favor of Prairie 
except
 
as
 
to
 
patients
 
who
 
had
 
a
 
preex­isting
 
profession­al
 
relationship
 
with
 
defendant
.  While the court ac­knowledged that courts have consis­tent­ly found phy­si­cian em­ploy­ers have a protectible interest in a rela­tion­ship with their patients, it went on to find:

"By affidavit, the facts here are somewhat different.  Defendant came into his employ­

ment relationship with Plaintiff with a num­

ber of patients who followed him from the medical school.  Under the analysis made of '[protectible] business interest' in the cases above cited, it is difficult to find that the restraint of trade normally disfavored by the law is justified as to those patients.  To prohibit patients from treating with 'their' doctor would seem to not just inhibit trade, but more importantly denigrate the relation­ship of doctor and patient."

In so holding, the trial court relied on 
Dowd & Dowd, Ltd. v. Gleason
, 181 Ill. 2d 460, 693 N.E.2d 358 (1998), in which the Su­preme Court of Illi­nois held a covenant not to compete unen­force­able be­tween a law firm and two departing attorneys.  The trial court acknowl­edged that the 
Dowd
 opinion is based on in­ter­pre­ta­tion of Rule 5.6 of the Rules of Professional Conduct (134 Ill. 2d R. 5.6), which ap­plies ex­clu­sive­ly to the legal pro­

fes­sion.  Nev­er­the­less, the trial court relied on the following quote from 
Dowd
: "The rule is de­signed both to af­ford cli­ents great­er free­dom in choos­ing coun­sel and to protect law­yers from oner­ous con­di­tions that would unduly limit their mobil­ity."  
Dowd
, 181 Ill. 2d at 481, 693 N.E.2d at 369.  The trial court found "it is in­con­ceiv­able that pub­lic poli­cy is ap­pli­cable to only one pro­fes­sion."  Thus, the trial court granted the injunc­

tion in favor of Prairie, but allowed Butler to continue to treat those pa­tients he acquired through his practice at SIU.

In February 1999, after additional briefing and affi­da­

vits from both parties, the trial court reaffirmed its January order.  This appeal followed.  

ANALYSIS

This appeal is pursuant to Supreme Court Rule 307(a)(1) (166 Ill. 2d R. 307(a)(1)), and thus, the only ques­tion prop­er­ly before us is whether a suffi­cient show­ing was made to the trial court to sustain its order granting or denying the relief sought.  
Postma v. Jack Brown Buick, Inc.
, 157 Ill. 2d 391, 399, 626 N.E.2d 199, 203 (1993).  An appeal under this rule may not be used "as a vehicle to determine the merits of a plaintiff's case."  
Postma
, 157 Ill. 2d at 399, 626 N.E.2d at 203.  Trial courts have substan­tial discretion in deciding wheth­er to grant a tempo­rary injunc­tion (
Danville Poly­clinic, Ltd. v. Dethmers
, 260 Ill. App. 3d 108, 109, 631 N.E.2d 842, 843 (1994)), and the deci­

sion of the trial court will not be dis­turbed on ap­peal absent an abuse of dis­cre­tion (
Weitekamp v. Lane
, 250 Ill. App. 3d 1017, 1022, 620 N.E.2d 454, 458 (1993)).  

As a general rule, a preliminary injunction will only be granted where the plaintiff shows it (1) has a clearly ascer­

tain­able right that needs pro­tec­tion, (2) will suf­fer ir­rep­a­ra­ble harm with­out the pro­tec­tion, (3) has no adequate remedy at law, and (4) is likely to succeed on the merits.  
Postma
, 157 Ill. 2d at 399, 626 N.E.2d at 204.  This court has also considered wheth­

er the bene­fits of grant­ing the pre­lim­i­nary in­junc­tion will ex­

ceed the inju­ry to the defen­dant.  
Danville
, 260 Ill. App. 3d at 111, 631 N.E.2d at 844; 
Sarah Bush Lincoln Health Center v. Perket
, 238 Ill. App. 3d 958, 961, 605 N.E.2d 613, 616 (1992).  A plain­tiff need only make a 
prima
 
facie
 showing of evi­dence on the req­ui­site ele­ments to obtain in­junc­tive relief.  
Weitekamp
, 250 Ill. App. 3d at 1022, 620 N.E.2d at 458.

Because Illinois courts ab­hor restraints on trade, restrictive covenants are carefully scruti­nized.  
Gillespie v. Carbondale & Marion Eye Centers, Ltd.
, 251 Ill. App. 3d 625, 626, 622 N.E.2d 1267, 1269 (1993).  Though general­ly restraints of trade are held void, where the limitation as to time and territo­

ry is not unreason­able, a restrictive covenant is valid and en­

force­able, and re­lief by in­junction is customary and proper.  
Canfield v. Spear
, 44 Ill. 2d 49, 50-51, 254 N.E.2d 433, 434 (1969).  In de­ter­mining whether to grant an injunction enforcing a restric­tive covenant, courts look to whether the covenant is reasonable (
Weitekamp
, 250 Ill. App. 3d at 1023, 620 N.E.2d at 459) and valid (
Retina Ser­vices, Ltd. v. Garoon
, 182 Ill. App. 3d 851, 855, 538 N.E.2d 651, 652 (1989)).

Prairie contends the trial court abused its discretion when it improperly re­lied on the public policy rationale articu­

lated in 
Dowd
 and asks this court to decide whether the 
Dowd
 holding applies out­side the legal profession and renders noncom­

pete cove­nants between professionals unen­force­able.  A find­ing so broad, howev­er, is not necessary to resolve the issue raised by this ap­peal.  Re­gard­less of its rationale, the trial court found Prairie failed to show it has a protectible interest in 
all
 of the pa­tients Butler treated while in its em­ploy.  We dis­agree with the trial court's con­clu­sion and find, under exist­ing prece­

dent, Prairie pres­ented suf­fi­cient evi­dence of a protectible interest to satis­fy its bur­den and secure a prelimi­nary injunc­

tion against Butler. 

Butler contends his situ­a­tion is unique and dis­tin

guishable from the line of cases upholding restrictive covenants between medical professionals when the time restriction and geo­

graph­ic scope are reasonable.  According to Butler's affi­da­vit, as of Janu­ary 1999, 60% of the patients he was treat­ing at Prai­

rie had been his pa­tients at SIU, and he contends Prairie has no protectible in­ter­est in those pa­tients.  Butler cites no au­thori­

ty to support his posi­tion but argues the ex­isting case law should not apply to him.  Butler contends the existing case law de­vel­oped to pro­tect established phy­si­cian em­ploy­ers from new­com­

ers to the pro­fession who, upon join­ing the prac­tice, could build­ a rela­tion­ship with the exist­ing patient base, and then usurp those pa­tients upon leaving the practice.  
Ergo
, be­cause But­ler was not a new­com­er to the pro­fes­sion or a "potential usurp­er" when he was hired by Prairie, these cases are inapplicable and we should con­sid­er his as a case of first impres­sion.  We are not persuad­ed.  While the facts of this case are unique, anal­o­gous cases do ex­ist. 

As Butler suggests, most recent published cas­es involve an employer suing to enforce a re­stric­tive cove­nant to pre­vent a new­com­er to an ex­ist­ing and estab­lished practice from raiding that practice's cli­ent base upon his or her eventual departure.  How­ev­er, in 
Bauer v. Saw­yer
, 8 Ill. 2d 351, 134 N.E.2d 329 (1956), the cir­cumstanc­es of the depart­ing physician's employment were simi­lar to Butler's.  In 
Bauer
, the dispute arose between a pro­fessional partnership and Saw­yer, an origi­nal found­ing member of the part­nership, when Saw­yer left the practice and the part­

ner­ship sought to enforce the covenant-not-to-compete provi­sion of the part­ner­ship agree­ment.  Saw­yer ar­gued be­cause he was not a new­comer to the prac­tice or a poten­tial usurp­er of the partner

ship's pa­tients, the restric­tive cove­nant should not be en­forced.  
Bauer
, 8 Ill. 2d at 356, 134 N.E.2d at 332.  The Su­preme Court of Illi­nois re­ject­ed this argu­ment and held:  

"No case is cited which holds that the mem­

bers of a partnership may not by their agree­

ment reasonably protect themselves against the competition of an outgoing partner.  Indeed such agreements are classic illustra­

tions of reasonable restraints of trade.  'A legitimate method of enhancing the good will of continuing part­ners in professional, as well as commercial, partnerships is to secure forbearance from competition by a retired partner.'"  
Bauer
, 8 Ill. 2d at 356, 134 N.E.2d at 332, quoting J. Crane, Partner­ships §84 (1952).

Butler suggests 
Bauer
 is outdated and inapplicable because courts apply a less restrictive test of reasonableness to covenants entered into by busi­ness asso­ci­ates than to agree­ments between em­ploy­ers and em­ploy­ees.  We dis­agree.  The differ­ence in the de­gree of scruti­ny derives from the assump­tion that business asso­ciates negotiate their agreements from posi­tions of rela­tive­

ly equal bar­gaining power, while an em­ployer generally has great­

er bar­gain­ing power than a potential employee.  
Weitekamp
, 250 Ill. App. 3d at 1023, 620 N.E.2d at 459.  In the ab­sence of a dispari­ty in bar­gaining power, the formalistic defi­ni­tion of the parties' rela­tionship is irrelevant.  In this case, by his own admis­sion, Butler came to the table an established phy­si­cian with a substan­tial pa­tient base.  Moreover, restrictive covenants in medical practice cases have long been treated by courts as a distinct class.  See 
Retina Servic­es, Ltd.
, 182 Ill. App. 3d at 856, 538 N.E.2d at 653; 
Danville
, 260 Ill. App. 3d at 111, 631 N.E.2d at 845.

In cases following 
Bauer
, courts have found medi­cal practices have a protectible business interest in the pa­tients of their physicians, the existence of which is in­ferred from the na­

ture of the profession.  In 
Sarah Bush
, 238 Ill. App. 3d at 963, 605 N.E.2d at 617, this court held the exis­tence of a protectible interest was in­herent in the relation­ship between a director of physical therapy and her em­ployer, a not-for-profit hospital, because the rela­tion­ship be­tween the par­ties was close­ly anal­o­

gous to the rela­tionships of the par­ties in 
Cockerill v. Wilson
, 51 Ill. 2d 179, 281 N.E.2d 648 (1972), in­volving two veterinari­

ans, and 
Canfield
, 44 Ill. 2d 49, 254 N.E.2d 433, involv­ing two physicians.  In 
Sarah Bush
, we ac­knowledged the Su­preme Court of Illinois had not in the pre­vi­ous 20 years consid­ered the ques­tion of wheth­er an em­ployer held a propri­etary in­ter­est in its cli­ents or pa­tients.  
Sarah Bush
, 238 Ill. App. 3d at 962, 605 N.E.2d at 616.  We further noted that even in 
Cockerill
, the court made short shrift of the ques­tion by simply stating that the inter­est the plaintiff sought to protect was the inter­est in his cli­ents.  
Sarah Bush
, 238 Ill. App. 3d at 963, 605 N.E.2d at 617.  Butler's argument suggests a deeper inquiry is required.

Butler contends Prairie must show a "near perma­nent rela­tionship" exists be­tween it and Butler's patients in order to show it has a protectible interest in them.  Butler cites 
Danville
, 260 Ill. App. 3d 108, 631 N.E.2d 842, in which this court affirmed a trial court's refusal to grant a pre­limi­nary injunction enforcing a restrictive covenant be­tween a doctor and his part­ners in practice.  We dis­agree with Butler's inter­preta­

tion of 
Danville
.  In 
Danville
, the trial court found Poly­clin­ic had no protectible interest in Dethmer's patients because (1) plaintiff offered no proof of a near-per­ma­nent rela­tion­ship be­

tween Polyclinic and Dethmer's pa­tients, and (2) the re­stric­tive cove­nant was not intended to protect an in­terest in Dethmer's pa­

tients, but to retain a suffi­cient number of part­ners so as to fi­nance con­struction of a new build­ing.  
Danville
, 260 Ill. App. 3d at 113, 631 N.E.2d at 845-46.  The trial court also found the physicians practicing at Polyclinic oper­at­ed with a notable de­

gree of independence from Polyclinic, and Dethmer's contract emphasized services Polyclinic would pro­vide to him, which dis­

tinguished it from a typical em­ployment agree­ment.  
Danville
, 260 Ill. App. 3d at 112, 631 N.E.2d at 845.

We noted two fac­tors were "very sig­nif­i­cant" to the hold­ing in 
Danville
:  the trial court's sub­stan­tial discre­tion and the un­usual nature of the agreement be­tween the par­ties.  
Danville
, 260 Ill. App. 3d at 109, 631 N.E.2d at 843.  We do not construe 
Danville
 as holding evidence of a near-per­ma­nent rela­tionship between an employer and a physician's pa­tients is re­

quired to prove the employer has a protectible in­ter­est in those patients.  The precedential scope of a decision is limited to the facts before the court.  
People v. Flatt
, 82 Ill. 2d 250, 261, 412 N.E.2d 509, 515 (1980).  
Danville
 merely holds the trial court's deni­al of the in­junc­tion was not an abuse of dis­cre­tion or against the mani­fest weight of the evi­dence under the facts and circumstances par­ticu­lar to the case. 

In 
Gillespie
, 251 Ill. App. 3d at 627, 622 N.E.2d at 1269, the fifth dis­trict found a plain­tiff is not required to estab­lish it has a near-permanent rela­tion­ship with its clientele in order to es­tab­lish a protectible interest.  In so holding, the 
Gillespie
 court relied on the first district case, 
Retina Servic­

es, Ltd.
, which found:

"The Illinois Supreme Court has repeat­

edly upheld covenants not to compete in medi­

cal practice cases without making a specific inquiry into whether the plaintiff has demon­

strated a [protectible] business interest.  Notwithstanding the appellate court decisions which have carefully scrutinized whether the plaintiff has shown a [protectible] interest in cases outside the medical practice area, the Illinois [S]upreme [C]ourt's consistent en­force­ment of such covenants in the medical profes­sional field, where the durational and geo­graphic scope is reasonable, demonstrates its recognition that a professional's medical practice is a [protectible] business inter­

est."  
Retina Services, Ltd.
, 182 Ill. App. 3d at 856, 538 N.E.2d at 653.

We find Prairie made a suf­fi­cient show­ing of its protectible in­ter­est in Butler's pa­tients.  Prairie's in­ter­est is not merely "in­her­ent" in the rela­tion­ship be­tween But­ler and Prairie; rather, this interest is precisely what Prairie negoti­

ated for when it en­tered the em­ploy­ment agreement with Butler.  As op­posed to the circumstances of 
Danville
, the re­stric­tive cove­nant here was clearly en­tered for the pur­pose of pro­tect­ing Prairie's interest in Butler's pa­tients.  

The trial court was concerned enforcing the cove­nant will in­hib­it trade.  An equally impor­tant public poli­cy in Illi­

nois is the free­dom to con­tract.  
McClure Engineering Associates, Inc. v. Reuben H. Donnelley Corp.
, 95 Ill. 2d 68, 72, 447 N.E.2d 400, 402 (1983).  Butler was free to nego­tiate for the right to treat his preex­isting patients upon ter­mina­tion of his con­tract with Prai­rie.  But­ler ac­cepted the bene­fits of the con­tract he made and seeks now to avoid its bur­dens by arguing it is against pub­lic policy.  "Our courts apply a strict test in de­ter­min­ing wheth­er a con­tract violates public policy; there­fore, the courts will not de­clare a contract illegal unless it express­ly contra­

venes the law or a known public policy of this state."  
Stevens v. Rooks Pitts & Poust
, 289 Ill. App. 3d 991, 997-98, 682 N.E.2d 1125, 1131 (1997).  Butler's contract with Prairie does neither.  The trial court's reso­lu­tion ele­vated the rights of pa­tients to see "their" doctor over the con­tract inter­ests of Prairie and Butler.  This is an ap­proach for which we have found no pre­ce­

dent.

A body of law has de­veloped spe­cifi­cally deal­ing with restrictive cove­nants be­tween medi­cal pro­fes­sion­als.  In light of the considerable existing pre­ce­dent, the trial court's reliance on 
Dowd
 was unwarranted.  We need not rely on a new deci­sion in a dif­ferent area of law--an area which has al­ways been treat­ed differ­ent­ly--given the well-devel­oped body of law direct­ly on point.  

CONCLUSION

For the foregoing reasons, this cause is reversed and remanded for further proceedings not inconsistent with this or­

der. 

Reversed and remanded with directions.

STEIGMANN and McCULLOUGH, JJ., concur.