RETINA SERVICES, LTD., Plaintiff-Appellant, v. IRA GAROON, Defendant-Appellee.

First District (1st Division)   No. 1—88—1038

Opinion filed April 24, 1989.

Adams, Fox, Adelstein & Rosen and O'Keefe, Ashenden, Lyons & Ward, both of Chicago (Michael E. Fox, Peter V. Baugher, Norman Rifkind, and J. Michael Heaton, of counsel), for appellant.

Timothy R. Conway and Brad L. Jansen, both of Chicago, for appellee.

JUSTICE BUCKLEY delivered the opinion of the court:

Retina Services, Ltd. (plaintiff), brought this interlocutory appeal from the circuit court's denial of its motion for a preliminary injunction to enjoin Ira Garoon, M.D. (defendant), from providing medical services at five hospitals for a two-year period in contravention of a restrictive covenant not to compete in defendant's employment contract. The sole issue presented for our review is whether the circuit court erred in finding the covenant unenforceable. We reverse.

Plaintiff is an Illinois medical corporation. Its shareholders and professional employees, Joel Kaplan, M.D., and Frank P. La Franco, M.D., are ophthalmologists who subspecialize in retinal surgery. Plaintiff's practice is centered in the Chicago metropolitan area at eight hospitals which possess the equipment necessary for its subspecialty. Its patients consist mainly of referrals from other ophthalmologists.

Kaplan began marketing his subspecialty in 1966 by establishing contacts with ophthalmologists through speaking engagements and various other means. La Franco joined the practice in 1977. Either Kaplan or La Franco serves on the staff of five of the eight hospitals where they practice. In addition, of these five hospitals, they have founded eye centers at three hospitals and have nonexclusive contracts[1] to perform retinal services with four hospitals.

Defendant began employment with plaintiff in 1982 after completing his fellowship in Massachusetts. At that time, defendant, who was represented by counsel, entered into a one-year contract with

---

[1]While these contracts are nonexclusive, plaintiff has exclusive use of the hospital facilities as a matter of practice.

plaintiff for a $70,000 annual salary plus benefits. The contract contained various covenants not to compete after termination of his employment. Thereafter, upon Kaplan's and La Franco's sponsorship and letters of recommendation, defendant received staff appointments at five of the hospitals Kaplan and La Franco were affiliated with and thereby gained access to their referring sources.

Defendant, again represented by counsel, entered into two subsequent employment agreements with plaintiff, extending the term of his employment at substantial increases in his salary with less restrictive covenants not to compete. Before signing the 1987 contract in issue here, defendant contacted an attorney for the American Medical Association who, he understood, was an expert on noncompetition agreements. Under this contract, defendant received cash compensation in excess of $300,000 along with approximately $50,000 in fringe benefits.

After Kaplan and La Franco decided not to renew defendant's contract at the expiration of the 1987 contract, defendant continued to practice at the five hospitals in contravention of the covenants. Plaintiff then filed an action to enforce the restrictive covenants. In its motion for preliminary injunction, plaintiff sought only to enforce that portion of the restrictive covenant which prohibited defendant from performing medical services at or serving on the staff of the five named hospitals and did not choose to enforce that portion which prohibited defendant from "tak[ing] any action [which may] disturb the existing *** relationship of the Corporation with any referral source or any patient of Corporation" or from soliciting business from either.

In finding the covenant unenforceable, the circuit court found that plaintiff did not prove the existence of a protectable interest in its customer relationships because it did not establish a "near-permanent relationship" and "unlikely employee contact save for the employment." It also voiced concern over whether the geographic scope of the covenant was overly broad and necessary to protect plaintiff's interest.

■■ ■ It is established that a party who seeks a preliminary injunction must demonstrate by a preponderance of the evidence that (1) a certain and clearly ascertained right needs protection, (2) irreparable injury will occur without the injunction, (3) no adequate remedy at law exists, and (4) there is probability of success on the merits of the case. (*A.B. Dick Co. v. American Pro-Tech* (1987), 159 Ill. App. 3d 786, 514 N.E.2d 45; *McRand, Inc. v. Van Beelen* (1985), 138 Ill. App. 3d 1045, 486 N.E.2d 1306; *Hydroaire, Inc. v. Sager* (1981), 98 Ill. App. 3d 758, 424 N.E.2d 719.) The determination of whether to grant

or deny an injunction rests within the discretion of the trial court, and a reviewing court's role is limited to determining whether the trial court's findings are against the manifest weight of the evidence. *McRand*, 138 Ill. App. 3d at 1050-51, 486 N.E.2d at 1311; *A.B. Dick Co.*, 159 Ill. App. 3d at 791, 514 N.E.2d at 48; *Hydroaire*, 98 Ill. App. 3d at 761, 424 N.E.2d at 722.

■ Whether injunctive relief should issue to enforce restrictive covenants not to compete in employment contracts depends upon the validity of the covenant, the determination of which is a question of law. (*McRand*, 138 Ill. App. 3d at 1051, 486 N.E.2d at 1311; *Tower Oil & Technology Co. v. Buckley* (1981), 99 Ill. App. 3d 637, 642, 425 N.E.2d 1060, 1065; *Image Supplies, Inc. v. Hilmert* (1979), 71 Ill. App. 3d 710, 712, 390 N.E.2d 68, 70.) Illinois courts carefully scrutinize the validity of these covenants that restrain trade (*Akhter v. Shah* (1983), 119 Ill. App. 3d 131, 456 N.E.2d 232), and their enforceability is dependent upon the reasonableness of the restraint. *Hydroaire*, 98 Ill. App. 3d at 764, 424 N.E.2d at 724; *House of Vision, Inc. v. Hiyane* (1967), 37 Ill. 2d 32, 37, 225 N.E.2d 21, 24.

■ ■ In judging the reasonableness of covenants not to compete in a variety of employment settings, Illinois lower courts have focused on a number of different factors. Among these factors are whether the contract is supported by valuable consideration, whether the restraint is greater than necessary to protect the promisee, whether enforcement of the contract would be injurious to the public, whether enforcement would cause undue hardship to the promisor, whether the durational and geographic scope of the covenant is reasonable, and whether the employer has a protectable business interest. (See, *e.g., Akhter*, 119 Ill. App. 3d 131, 456 N.E.2d 232; *Hydroaire*, 98 Ill. App. 3d 758, 424 N.E.2d 719; *A.B. Dick Co.*, 159 Ill. App. 3d 786, 514 N.E.2d 45.) Those courts which have examined whether a protectable business interest exists have applied a two-part test to reach its determination—the employer must have a near-permanent relationship with its customers and the employee would not have had contact with the customers but for the employment. *McRand*, 138 Ill. App. 3d at 1051; 486 N.E.2d at 1311; *A.B. Dick Co.*, 159 Ill. App. 3d at 793, 514 N.E.2d at 49.

The parties on appeal dispute what plaintiff is required to show to enforce a restrictive covenant not to compete among doctors under Illinois law. Specifically, defendant asserts that plaintiff must show that it had a protectable business interest in the five hospitals under the two-part test cited above, while plaintiff argues that Illinois courts recognize the goodwill inherent in a medical practice to be a pro-

tectable interest in consistently enforcing such covenants.

■ The Illinois Supreme Court has repeatedly upheld covenants not to compete in medical practice cases without making a specific inquiry into whether the plaintiff has demonstrated a protectable business interest. Notwithstanding the appellate court decisions which have carefully scrutinized whether the plaintiff has shown a protectable interest in cases outside the medical practice area, the Illinois supreme court's consistent enforcement of such covenants in the medical professional field, where the durational and geographic scope is reasonable, demonstrates its recognition that a professional's medical practice is a protectable business interest.

In the early case of *Bauer v. Sawyer* (1956), 8 Ill. 2d 351, 134 N.E.2d 329, the supreme court noted that while contracts in general restraint of trade are generally held to be illegal, an exception exists in contracts where doctors in a medical partnership seek to prohibit a retiring partner from practicing medicine in the same city through a reasonable restraint. In *House of Vision* (37 Ill. 2d 32, 225 N.E.2d 21), the sole case where the court found a medical practice covenant not to compete to be unenforceable, the court weighed the employer's interests in protecting its customers of contact lenses with the hardships of the unlimited time period and the large geographic area of the covenant on the employee and concluded it was unreasonable.

Additionally, the court broadly stated in *Canfield v. Spear* (1969), 44 Ill. 2d 49, 254 N.E.2d 433, where the doctor specializing in dermatology became known in the city through opportunities provided by his association with the clinic, that where the limitation as to time and territory is not unreasonable, agreements in cases like the one before it are valid and enforceable and relief by injunction customary and proper. Similar to defendant's arguments in the instant case, the supreme court in *Canfield* found no merit to defendant's arguments that plaintiff had no protectable interest, that the public welfare would be injured, and that enforcing the agreement would be an undue hardship on defendant. (*Canfield*, 44 Ill. 2d at 50, 254 N.E.2d at 434.) In the most recent medical practice case considered by the supreme court, *Cockerill v. Wilson* (1972), 51 Ill. 2d 179, 281 N.E.2d 648, the court again restated the rule that covenants involving performances of professional services have been held valid and enforceable when the limitations as to time and territory are not unreasonable.

■ Defendant argues that contrary to these supreme court cases, plaintiff's protectable interest is not evident here because the covenant restricts practice at hospitals, as opposed to patients, and be-

cause plaintiff here does not have an exclusive interest in the named hospital facilities. None of the supreme court cases, however, has so limited its holding or has suggested such a narrow interpretation. In fact, the employers in the above supreme court cases did not have any exclusive interest or right to practice in the cities or areas defined in those covenants or in the potential patients of those areas. Moreover, the restrictions not to practice medicine in a defined area in those cases necessarily included practice at hospitals. The circuit court, therefore, improperly denied the injunction on grounds that plaintiff did not have a protectable interest in its medical practice.

■ The circuit court's belief that the covenant's geographic scope[2] was overly broad and not reasonably necessary to protect plaintiff's interests is also not consistent with the supreme court case law. A review of the trial court's findings reveals, first, that the trial court apparently believed that the five-hospital limitation was too broad in geographic scope because it required defendant to practice only at Michael Reese Hospital, Holy Cross Hospital, and hospitals in the suburban areas in the south and west sides of metropolitan Chicago.

The supreme court has found to be reasonable geographic limitations in medical practice cases which were far broader in scope than the five-hospital limitation here. (*Canfield*, 44 Ill. 2d 49, 254 N.E.2d 433 (three-year prohibition from practicing all medicine within the City of Rockford and surrounding radius of 25 miles); *Cockerill*, 51 Ill. 2d 179, 281 N.E.2d 648 (five-year prohibition of practicing medicine in a 20-mile area); *Bauer*, 8 Ill. 2d 351, 134 N.E.2d 329 (five-year prohibition on practicing medicine within a 25-mile radius of Kankakee); *Storer v. Brock* (1933), 351 Ill. 643, 184 N.E. 868 (unlimited time prohibition from practicing medicine in the entire City of Chicago).) The supreme court has reasoned in these cases that no special hardship exists because the defendant could practice elsewhere or resume practicing in the area after the restricted period has ended. (See *Bauer*, 8 Ill. 2d at 355, 134 N.E.2d at 331; *Canfield*, 44 Ill. 2d at 51, 254 N.E.2d at 434.) The sole covenant not to compete in medical practice cases found by the supreme court to be unreasonable involved a covenant far broader in scope than the one in the case at bar. In *House of Vision* (37 Ill. 2d 32, 225 N.E.2d 21), the court found to be

---

[2]The covenant's five-hospital limitation in the case at bar not only defines the limitations on defendant's ability to practice but defines the geographic area where he is limited, as the equipment at the hospitals is necessary for defendant's practice and patient referrals depend on patient proximity to a hospital.

unreasonable an unlimited time prohibition from practicing medicine within 30 miles from any of plaintiff's offices, which included a Highland Park office 23 miles north of Chicago and a Waukegan office 35 miles north of Chicago.

■■ Second, the trial court apparently found that the five-hospital restriction was not necessary to protect plaintiff's interests. The supreme court has repeatedly found restrictive covenants protecting a professional's medical practice to be necessary. In *Cockerill* (51 Ill. 2d 179, 281 N.E.2d 648), the supreme court reversed the appellate court's finding that a 20-mile restriction was not necessary to protect the plaintiff's interest. The court stated that in determining the reasonableness of the restriction, the injurious effect upon the general public must be considered as well as any undue hardship upon the employee and the need for the protection of the limitation by the employer. (*Cockerill*, 51 Ill. 2d at 184, 281 N.E.2d at 651.) In finding that the restriction on practicing all veterinary medicine in that area was necessary to afford the plaintiff the protection in his clients, the court noted that by bringing the defendant into the association, the plaintiff was bringing him into contact with a clientele which plaintiff had established over a period of years.

Likewise, plaintiff here introduced defendant to its contacts with the hospitals and referring ophthalmologists, which it had spent 11 years developing. The five hospitals account for 85% of plaintiff's business and 170 referring physicians on the staffs of these hospitals account for 65% of its business. Because the equipment at the hospitals is necessary for treatment in plaintiff's subspecialty and because referring ophthalmologists consider patient proximity to a hospital in making referrals, the enforcement of the five-hospital restriction would protect plaintiff's interests in the referring ophthalmologists. In line with the supreme court case law, we find that the five-hospital limitation is necessary for plaintiff's protection of its interests.

■■ Third, the court voiced concern over the fact that the restraint prohibits hospital staff privileges not only for referring patients but also for defendant's own patients. This restraint is not a sufficient basis for finding the covenant overly broad. The restrictions in all the supreme court cases upholding covenants in this area have barred the physician from practicing *all medicine* in the particular area, not only the treatment of previous or future patients of the medical practice.

Based upon the supreme court case law, we find that the terms of the covenant in the case at bar are reasonable and that the trial court's findings to the contrary are against the manifest weight of the evidence.

Accordingly, we hold that the circuit court erred in finding the restrictive covenant unenforceable because plaintiff did not prove a protectable business interest and hold that the trial court's findings as to the reasonableness of the covenant to be against the manifest weight of the evidence. Thus, we reverse the circuit court's order denying plaintiff's motion for a preliminary injunction and remand this case with directions to the circuit court to grant plaintiff injunctive relief.

Reversed and remanded with directions.

MANNING, P.J., and CAMPBELL, J., concur.