PRAIRIE EYE CENTER, LTD., f/k/a Centrum Eye Center, Ltd., Plaintiff-Appellant, v. PATRICK J. BUTLER, Defendant-Appellee.

Fourth District    No. 4—99—0127

Argued May 26, 1999.—Opinion filed June 11, 1999.

Robert E. Gillespie and William P. Hardy (argued), both of Hinshaw & Culbertson, of Springfield, for appellant.

James P. Baker (argued), of Law Offices of James P. Baker, of Springfield, for appellee.

PRESIDING JUSTICE KNECHT delivered the opinion of the court:

In this interlocutory appeal, plaintiff, Prairie Eye Center, Ltd.

(Prairie), seeks reversal of the trial court's order granting in part its motion for a preliminary injunction. Prairie contends it is entitled to complete relief and to force defendant's compliance with the covenant-not-to-compete clause of the parties' employment agreement. We reverse and remand with directions.

## BACKGROUND

Defendant, Patrick J. Butler, is an ophthalmologist who specializes in the treatment of glaucoma. In February 1997, Butler entered an employment agreement with Centrum Eye Center, Ltd. Later that year Centrum Eye Center changed its name to Prairie Eye Center and the parties executed a second identical agreement. For three years prior to his employment with Prairie, Butler maintained a clinical practice at the Southern Illinois University School of Medicine (SIU).

The employment agreement between Butler and Prairie contains the following covenant not to compete:

"Upon the expiration or termination of this Agreement, employee covenants that he will not, for a period of two (2) years after expiration or termination, engage in, be associated with or have a financial interest in any medical practice or ophthalmology practice, either directly or indirectly, as employer, employee, principal agent, independent contractor, consultant, partner, stockholder, creditor in any other capacity, at any location(s) within Sangamon County, Illinois[,] or within ten (10) miles of Hillsboro, Illinois[,] and ten (10) miles of any branch office of Employer. *** Employee acknowledges that Employer has a valid, [protectible] interest in its medical and ophthalmology practice, and that the duration and geographic scope of this covenant are reasonable to protect that interest."

In December 1998, Butler informed Prairie of his intention to terminate his employment and establish a practice in Springfield, Illinois. Butler opened an office approximately two miles from Prairie's Springfield location.

In January 1999, Prairie filed a complaint in the circuit court seeking declaratory relief, permanent injunctive relief, and preliminary injunctive relief. By its claim Prairie sought to enjoin defendant from (1) practicing medicine/ophthalmology at any location within Sangamon County or within 10 miles of its branch offices in Hillsboro, Girard, Rushville, Beardstown, Lincoln, and Decatur; (2) having any association with, or interest in, a practice in the restricted area; (3) soliciting Prairie's patients; and (4) soliciting Prairie's employees. Prairie also sought reasonable attorney fees and any other relief deemed proper by the court.

Two days later, the trial court entered an order granting the

injunction in favor of Prairie *except as to patients who had a preexisting professional relationship with defendant*. While the court acknowledged that courts have consistently found physician employers have a protectible interest in a relationship with their patients, it went on to find:

> "By affidavit, the facts here are somewhat different. Defendant came into his employment relationship with Plaintiff with a number of patients who followed him from the medical school. Under the analysis made of '[protectible] business interest' in the cases above cited, it is difficult to find that the restraint of trade normally disfavored by the law is justified as to those patients. To prohibit patients from treating with 'their' doctor would seem to not just inhibit trade, but more importantly denigrate the relationship of doctor and patient."

In so holding, the trial court relied on *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 693 N.E.2d 358 (1998), in which the Supreme Court of Illinois held a covenant not to compete unenforceable between a law firm and two departing attorneys. The trial court acknowledged that the *Dowd* opinion is based on interpretation of Rule 5.6 of the Rules of Professional Conduct (134 Ill. 2d R. 5.6), which applies exclusively to the legal profession. Nevertheless, the trial court relied on the following quote from *Dowd*: "The rule is designed both to afford clients greater freedom in choosing counsel and to protect lawyers from onerous conditions that would unduly limit their mobility." *Dowd*, 181 Ill. 2d at 481, 693 N.E.2d at 369. The trial court found "it is inconceivable that public policy is applicable to only one profession." Thus, the trial court granted the injunction in favor of Prairie, but allowed Butler to continue to treat those patients he acquired through his practice at SIU.

In February 1999, after additional briefing and affidavits from both parties, the trial court reaffirmed its January order. This appeal followed.

## ANALYSIS

■ This appeal is pursuant to Supreme Court Rule 307(a)(1) (166 Ill. 2d R. 307(a)(1)), and thus, the only question properly before us is whether a sufficient showing was made to the trial court to sustain its order granting or denying the relief sought. *Postma v. Jack Brown Buick, Inc.*, 157 Ill. 2d 391, 399, 626 N.E.2d 199, 203 (1993). An appeal under this rule may not be used "as a vehicle to determine the merits of a plaintiff's case." *Postma*, 157 Ill. 2d at 399, 626 N.E.2d at 203. Trial courts have substantial discretion in deciding whether to grant a temporary injunction (*Danville Polyclinic, Ltd. v. Dethmers*, 260 Ill. App. 3d 108, 109, 631 N.E.2d 842, 843 (1994)), and the decision of the

trial court will not be disturbed on appeal absent an abuse of discretion (*Weitekamp v. Lane*, 250 Ill. App. 3d 1017, 1022, 620 N.E.2d 454, 458 (1993)).

■ As a general rule, a preliminary injunction will only be granted where the plaintiff shows it (1) has a clearly ascertainable right that needs protection, (2) will suffer irreparable harm without the protection, (3) has no adequate remedy at law, and (4) is likely to succeed on the merits. *Postma*, 157 Ill. 2d at 399, 626 N.E.2d at 204. This court has also considered whether the benefits of granting the preliminary injunction will exceed the injury to the defendant. *Danville*, 260 Ill. App. 3d at 111, 631 N.E.2d at 844; *Sarah Bush Lincoln Health Center v. Perket*, 238 Ill. App. 3d 958, 961, 605 N.E.2d 613, 616 (1992). A plaintiff need only make a *prima facie* showing of evidence on the requisite elements to obtain injunctive relief. *Weitekamp*, 250 Ill. App. 3d at 1022, 620 N.E.2d at 458.

■ Because Illinois courts abhor restraints on trade, restrictive covenants are carefully scrutinized. *Gillespie v. Carbondale & Marion Eye Centers, Ltd.*, 251 Ill. App. 3d 625, 626, 622 N.E.2d 1267, 1269 (1993). Though generally restraints of trade are held void, where the limitation as to time and territory is not unreasonable, a restrictive covenant is valid and enforceable, and relief by injunction is customary and proper. *Canfield v. Spear*, 44 Ill. 2d 49, 50-51, 254 N.E.2d 433, 434 (1969). In determining whether to grant an injunction enforcing a restrictive covenant, courts look to whether the covenant is reasonable (*Weitekamp*, 250 Ill. App. 3d at 1023, 620 N.E.2d at 459) and valid (*Retina Services, Ltd. v. Garoon*, 182 Ill. App. 3d 851, 855, 538 N.E.2d 651, 652 (1989)).

Prairie contends the trial court abused its discretion when it improperly relied on the public policy rationale articulated in *Dowd* and asks this court to decide whether the *Dowd* holding applies outside the legal profession and renders noncompete covenants between professionals unenforceable. A finding so broad, however, is not necessary to resolve the issue raised by this appeal. Regardless of its rationale, the trial court found Prairie failed to show it has a protectible interest in *all* of the patients Butler treated while in its employ. We disagree with the trial court's conclusion and find, under existing precedent, Prairie presented sufficient evidence of a protectible interest to satisfy its burden and secure a preliminary injunction against Butler.

Butler contends his situation is unique and distinguishable from the line of cases upholding restrictive covenants between medical professionals when the time restriction and geographic scope are reasonable. According to Butler's affidavit, as of January 1999, 60% of

the patients he was treating at Prairie had been his patients at SIU, and he contends Prairie has no protectible interest in those patients. Butler cites no authority to support his position but argues the existing case law should not apply to him. Butler contends the existing case law developed to protect established physician employers from newcomers to the profession who, upon joining the practice, could build a relationship with the existing patient base, and then usurp those patients upon leaving the practice. *Ergo*, because Butler was not a newcomer to the profession or a "potential usurper" when he was hired by Prairie, these cases are inapplicable and we should consider his as a case of first impression. We are not persuaded. While the facts of this case are unique, analogous cases do exist.

As Butler suggests, most recent published cases involve an employer suing to enforce a restrictive covenant to prevent a newcomer to an existing and established practice from raiding that practice's client base upon his or her eventual departure. However, in *Bauer v. Sawyer*, 8 Ill. 2d 351, 134 N.E.2d 329 (1956), the circumstances of the departing physician's employment were similar to Butler's. In *Bauer*, the dispute arose between a professional partnership and Sawyer, an original founding member of the partnership, when Sawyer left the practice and the partnership sought to enforce the covenant-not-to-compete provision of the partnership agreement. Sawyer argued because he was not a newcomer to the practice or a potential usurper of the partnership's patients, the restrictive covenant should not be enforced. *Bauer*, 8 Ill. 2d at 356, 134 N.E.2d at 332. The Supreme Court of Illinois rejected this argument and held:

> "No case is cited which holds that the members of a partnership may not by their agreement reasonably protect themselves against the competition of an outgoing partner. Indeed such agreements are classic illustrations of reasonable restraints of trade. 'A legitimate method of enhancing the good will of continuing partners in professional, as well as commercial, partnerships is to secure forbearance from competition by a retired partner.' " *Bauer*, 8 Ill. 2d at 356, 134 N.E.2d at 332, quoting J. Crane, Partnerships § 84 (1952).

Butler suggests *Bauer* is outdated and inapplicable because courts apply a less restrictive test of reasonableness to covenants entered into by business associates than to agreements between employers and employees. We disagree. The difference in the degree of scrutiny derives from the assumption that business associates negotiate their agreements from positions of relatively equal bargaining power, while an employer generally has greater bargaining power than a potential employee. *Weitekamp*, 250 Ill. App. 3d at 1023, 620 N.E.2d at 459. In

the absence of a disparity in bargaining power, the formalistic definition of the parties' relationship is irrelevant. In this case, by his own admission, Butler came to the table an established physician with a substantial patient base. Moreover, restrictive covenants in medical practice cases have long been treated by courts as a distinct class. See *Retina Services, Ltd.*, 182 Ill. App. 3d at 856, 538 N.E.2d at 653; *Danville*, 260 Ill. App. 3d at 111, 631 N.E.2d at 845.

In cases following *Bauer*, courts have found medical practices have a protectible business interest in the patients of their physicians, the existence of which is inferred from the nature of the profession. In *Sarah Bush*, 238 Ill. App. 3d at 963, 605 N.E.2d at 617, this court held the existence of a protectible interest was inherent in the relationship between a director of physical therapy and her employer, a not-for-profit hospital, because the relationship between the parties was closely analogous to the relationships of the parties in *Cockerill v. Wilson*, 51 Ill. 2d 179, 281 N.E.2d 648 (1972), involving two veterinarians, and *Canfield*, 44 Ill. 2d 49, 254 N.E.2d 433, involving two physicians. In *Sarah Bush*, we acknowledged the Supreme Court of Illinois had not in the previous 20 years considered the question of whether an employer held a proprietary interest in its clients or patients. *Sarah Bush*, 238 Ill. App. 3d at 962, 605 N.E.2d at 616. We further noted that even in *Cockerill*, the court made short shrift of the question by simply stating that the interest the plaintiff sought to protect was the interest in his clients. *Sarah Bush*, 238 Ill. App. 3d at 963, 605 N.E.2d at 617. Butler's argument suggests a deeper inquiry is required.

Butler contends Prairie must show a "near permanent relationship" exists between it and Butler's patients in order to show it has a protectible interest in them. Butler cites *Danville*, 260 Ill. App. 3d 108, 631 N.E.2d 842, in which this court affirmed a trial court's refusal to grant a preliminary injunction enforcing a restrictive covenant between a doctor and his partners in practice. We disagree with Butler's interpretation of *Danville*. In *Danville*, the trial court found Polyclinic had no protectible interest in Dethmer's patients because (1) plaintiff offered no proof of a near-permanent relationship between Polyclinic and Dethmer's patients, and (2) the restrictive covenant was not intended to protect an interest in Dethmer's patients, but to retain a sufficient number of partners so as to finance construction of a new building. *Danville*, 260 Ill. App. 3d at 113, 631 N.E.2d at 845-46. The trial court also found the physicians practicing at Polyclinic operated with a notable degree of independence from Polyclinic, and Dethmer's contract emphasized services Polyclinic would provide to him, which distinguished it from a typical employment agreement. *Danville*, 260 Ill. App. 3d at 112, 631 N.E.2d at 845.

We noted two factors were "very significant" to the holding in *Danville*: the trial court's substantial discretion and the unusual nature of the agreement between the parties. *Danville*, 260 Ill. App. 3d at 109, 631 N.E.2d at 843. We do not construe *Danville* as holding evidence of a near-permanent relationship between an employer and a physician's patients is required to prove the employer has a protectible interest in those patients. The precedential scope of a decision is limited to the facts before the court. *People v. Flatt*, 82 Ill. 2d 250, 261, 412 N.E.2d 509, 515 (1980). *Danville* merely holds the trial court's denial of the injunction was not an abuse of discretion or against the manifest weight of the evidence under the facts and circumstances particular to the case.

In *Gillespie*, 251 Ill. App. 3d at 627, 622 N.E.2d at 1269, the fifth district found a plaintiff is not required to establish it has a near-permanent relationship with its clientele in order to establish a protectible interest. In so holding, the *Gillespie* court relied on the first district case, *Retina Services, Ltd.*, which found:

> "The Illinois Supreme Court has repeatedly upheld covenants not to compete in medical practice cases without making a specific inquiry into whether the plaintiff has demonstrated a [protectible] business interest. Notwithstanding the appellate court decisions which have carefully scrutinized whether the plaintiff has shown a [protectible] interest in cases outside the medical practice area, the Illinois [S]upreme [C]ourt's consistent enforcement of such covenants in the medical professional field, where the durational and geographic scope is reasonable, demonstrates its recognition that a professional's medical practice is a [protectible] business interest." *Retina Services, Ltd.*, 182 Ill. App. 3d at 856, 538 N.E.2d at 653.

■ We find Prairie made a sufficient showing of its protectible interest in Butler's patients. Prairie's interest is not merely "inherent" in the relationship between Butler and Prairie; rather, this interest is precisely what Prairie negotiated for when it entered the employment agreement with Butler. As opposed to the circumstances of *Danville*, the restrictive covenant here was clearly entered for the purpose of protecting Prairie's interest in Butler's patients.

The trial court was concerned enforcing the covenant will inhibit trade. An equally important public policy in Illinois is the freedom to contract. *McClure Engineering Associates, Inc. v. Reuben H. Donnelley Corp.*, 95 Ill. 2d 68, 72, 447 N.E.2d 400, 402 (1983). Butler was free to negotiate for the right to treat his preexisting patients upon termination of his contract with Prairie. Butler accepted the benefits of the contract he made and seeks now to avoid its burdens by arguing it is against public policy. "Our courts apply a strict test in determining

whether a contract violates public policy; therefore, the courts will not declare a contract illegal unless it expressly contravenes the law or a known public policy of this state." *Stevens v. Rooks Pitts & Poust*, 289 Ill. App. 3d 991, 997-98, 682 N.E.2d 1125, 1131 (1997). Butler's contract with Prairie does neither. The trial court's resolution elevated the rights of patients to see "their" doctor over the contract interests of Prairie and Butler. This is an approach for which we have found no precedent.

A body of law has developed specifically dealing with restrictive covenants between medical professionals. In light of the considerable existing precedent, the trial court's reliance on *Dowd* was unwarranted. We need not rely on a new decision in a different area of law—an area which has always been treated differently—given the well-developed body of law directly on point.

## CONCLUSION

For the foregoing reasons, this cause is reversed and remanded for further proceedings not inconsistent with this order.

Reversed and remanded with directions.

STEIGMANN and McCULLOUGH, JJ., concur.