No. 2--04--1239                                      filed: 4/11/06

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) | |
| v. | ) | No. 01--CF--1629 |
| | ) | |
| JOSEPH TRIMARCO, | ) ) | Honorable Robert J. Anderson, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE GROMETER delivered the opinion of the court:

Defendant, Joseph Trimarco, appeals from an order denying his motion to dismiss the State's two-count petition to revoke his probation. Defendant contends that the trial court erred because one charge forming the basis of the petition to revoke was nol-prossed, and, following a jury trial, defendant was acquitted of the other charge. Given the outcome of the jury trial, defendant claims that, at the revocation hearing, double jeopardy precludes the State from essentially prosecuting him again for the same charges. For the reasons that follow, we dismiss this appeal for lack of jurisdiction.

On December 9, 2002, defendant pleaded guilty to unlawful possession of cannabis (720 ILCS 550/4(b) (West 2002)), and he was sentenced to 12 months of probation. One condition of defendant's probation provided that he had to obey all state and federal laws and local ordinances. The State subsequently petitioned to revoke defendant's probation, contending that, on October 19, 2003, defendant was driving while under the influence (DUI), in violation of section 11--501 of the

Illinois Vehicle Code (Code) (625 ILCS 5/11--501 (West 2002)), and driving while his driving privileges were suspended, in violation of section 6--303 of the Code (625 ILCS 5/6--303 (West 2002)).

Subsequently, following a jury trial, defendant was acquitted of DUI, and the State nol-prossed the charge of driving with suspended driving privileges. Defendant moved to dismiss the State's petition to revoke his probation, claiming that, pursuant to People v. Grayson, 58 Ill. 2d 260 (1974), he would be subjected to double jeopardy if the State used the acquitted and nol-prossed charges as the basis to revoke his probation. The trial court denied defendant's motion and never ruled on the petition to revoke. Defendant now appeals the order denying his motion to dismiss, contending that this court's jurisdiction over his appeal is governed by Supreme Court Rule 604(f) (Official Reports Advance Sheet No. 4 (February 16, 2005), R. 604(f), eff. February 1, 2005).

Although neither party questions this court's jurisdiction, we have a duty to examine our jurisdiction sua sponte and to dismiss an appeal if jurisdiction is lacking. In re Alexis H., 335 Ill. App. 3d 1009, 1011 (2002). Generally, subject to certain exceptions, appellate courts do not have jurisdiction to review judgments, orders, or decrees that are not final. People v. Smith, 338 Ill. App. 3d 254, 256 (2003). However, Rule 604(f), the rule under which defendant seeks to appeal, is an exception to this rule (Smith, 338 Ill. App. 3d at 256), and it provides as follows:

"The defendant may appeal to the Appellate Court the denial of a motion to dismiss a criminal proceeding on grounds of former jeopardy." Official Reports Advance Sheet No. 4 (February 16, 2005), R. 604(f), eff. February 1, 2005.

At issue in this case is whether a probation revocation proceeding is a "criminal proceeding" as that term is used in Rule 604(f). When interpreting a supreme court rule, we must ascertain and give effect to the supreme court's intent. In re Marriage of Sproat, 357 Ill. App. 3d 880, 881 (2005).

In deciding what our supreme court intended, we first should examine the language used in the rule and consider each part of the rule in relation to the rest of the rule. Sproat, 357 Ill. App. 3d at 881. We also should consider the reason and necessity for the rule, the evil to be remedied, and the rule's purpose. Sproat, 357 Ill. App. 3d at 881. Because construction of a supreme court rule presents a question of law, our review is de novo. People v. Roberts, 214 Ill. 2d 106, 116 (2005).

Our supreme court has considered whether probation revocation proceedings are civil or criminal. On one such occasion, in a case factually similar to this case, our supreme court arguably suggested that probation revocation proceedings are "criminal in nature." Grayson, 58 Ill. 2d at 265. In Grayson, the defendant pleaded guilty to armed robbery and was sentenced to five years' probation. Grayson, 58 Ill. 2d at 261. Approximately one year later, the defendant was indicted for a second armed robbery, and, following a bench trial, the defendant was acquitted of that offense. On the basis of the second armed robbery, the State petitioned to revoke the defendant's probation. The trial court revoked the defendant's probation, basing its decision on the testimony of the same witnesses who testified at the defendant's second armed robbery trial, and the defendant appealed.

On appeal, the defendant contended that the State was precluded from seeking to revoke his probation based on the second armed robbery. Grayson, 58 Ill. 2d at 262. Our supreme court agreed. Grayson, 58 Ill. 2d at 265. In reaching that conclusion, the court observed that proceedings may be civil in form but criminal in nature, and that "the individual facing probation revocation may lose his liberty just as swiftly and surely as a defendant in a criminal case." Grayson, 58 Ill. 2d at 265.

More recently, in People v. Lindsey, 199 Ill. 2d 460, 467 (2002), our supreme court determined that probation revocation proceedings are civil proceedings. In Lindsey, the defendant was placed on sex-offender-specific intensive probation for 4 years and sentenced to 364 days of

work release. Lindsey, 199 Ill. 2d at 461. Under the terms of the defendant's work release, he was to be confined in a public building and released only for public service work and to attend counseling. After the defendant signed out of confinement at unauthorized times, the State petitioned to revoke his probation. At the hearing on the State's petition to revoke, the State called the defendant as an adverse witness. The trial court subsequently revoked the defendant's probation and sentenced him.

On appeal to our supreme court, the defendant argued, among other things, that the State violated his right against self-incrimination pursuant to article I, section 10, of the Illinois Constitution (Ill. Const. 1970, art. I, §10). Lindsey, 199 Ill. 2d at 462. Specifically, the defendant claimed that, at the revocation hearing, the State could not call him as an adverse witness to testify against himself. Lindsey, 199 Ill. 2d at 462. In addressing this issue, our supreme court first noted that the privilege against self-incrimination attaches when a defendant is compelled to testify against himself in a criminal case. Lindsey, 199 Ill. 2d at 462. Thus, a necessary precursor to the application of the right against self-incrimination was the determination of whether probation revocation proceedings are criminal proceedings.

Our supreme court, without any limitation, determined that "a probation revocation proceeding is a civil proceeding," and, thus, the defendant's right not to testify against himself was not violated when the State called him as an adverse witness during the probation revocation hearing. Lindsey, 199 Ill. 2d at 467, 471. In reaching this conclusion, our supreme court relied on two cases that the United States Supreme Court resolved in the context of the fifth amendment to the United States Constitution (U.S. Const., amend. V). See Minnesota v. Murphy, 465 U.S. 420, 79 L. Ed. 2d 409, 104 S. Ct. 1136 (1984); Gagnon v. Scarpelli, 411 U.S. 778, 36 L. Ed. 2d 656, 93 S. Ct. 1756 (1973). In both of those cases, the Supreme Court observed that a probation revocation

proceeding is not a criminal proceeding or a stage in a criminal prosecution. Murphy, 465 U.S. at 435 n.7, 79 L. Ed. 2d at 425 n.7, 104 S. Ct. at 1146 n.7; Gagnon, 411 U.S. at 782, 36 L. Ed. 2d at 661-62, 93 S. Ct. at 1759-60. Our supreme court then noted that several Illinois appellate courts had relied on both Murphy and Gagnon to conclude that probation revocation proceedings are civil proceedings. Lindsey, 199 Ill. 2d at 465 (and cases cited therein).

Here, even assuming that "criminal in nature" can be equated with "criminal proceeding," it is clear that Lindsey, not Grayson, controls. Indeed, Lindsey went so far as to assert that Grayson actually "did not suggest that probation revocation proceedings should be considered criminal in nature." Lindsey, 199 Ill. 2d at 466-67. In any event, the Lindsey court stated: "Grayson [does not] persuade us to depart from the well-reasoned decisions of Murphy and our appellate court. Accordingly, we hold that a probation revocation proceeding is a civil proceeding." Lindsey, 199 Ill. 2d at 467.

Given the fact that the drafters of Rule 604(f) have determined that probation revocation proceedings are civil proceedings, we conclude that defendant cannot appeal, pursuant to Rule 604(f), the denial of his motion to dismiss the State's petition to revoke his probation, because the drafters of Rule 604(f) specifically limited the rule's application to criminal proceedings. Thus, we lack jurisdiction to consider defendant's appeal under Rule 604(f). See, e.g., People v. Schram, 283 Ill. App. 3d 1056, 1061 (1996) (in case where defendant appealed under Rule 604(f), appellate court lacked jurisdiction to consider contentions that did not concern double jeopardy).

As a final matter, we mention that we are mindful of People v. Snell, 357 Ill. App. 3d 491 (2005), which defendant moved to cite as additional authority. In Snell, a case factually similar to this case, the reviewing court indicated that the defendant appealed pursuant to Rule 604(f) after the trial court revoked his probation and before it sentenced him. Snell, 357 Ill. App. 3d at 493.

Although the reviewing court never addressed whether Rule 604(f) vested it with jurisdiction over the defendant's appeal, we believe that jurisdiction in <u>Snell</u> lay under Supreme Court Rule 604(b), not Rule 604(f), because the defendant appealed after the trial court revoked his probation. See Official Reports Advance Sheet No. 4 (February 16, 2005), R. 604(b), eff. February 1, 2005 (stating that a defendant may appeal an order revoking probation); 730 ILCS 5/5--6--4(g) (West 2002) (providing that a judgment revoking a defendant's probation is a final appealable order). As the trial court here has not ruled on the petition to revoke defendant's probation, we cannot exercise jurisdiction over defendant's appeal pursuant to Rule 604(b).

We now address the points raised by the dissent. The dissent asserts that we are not bound by the statement in <u>Lindsey</u> that probation revocation proceedings are civil, because that statement was <u>dicta</u>. In fact, however, that statement was just the opposite; it was the court's explicit holding. <u>Lindsey</u>, 199 Ill. 2d at 467 ("we hold that a probation revocation proceeding is a civil proceeding"). Of course, even if the statement were <u>dicta</u>, it still may be binding. See <u>Woodstock Hunt Club v. Hindi</u>, 305 Ill. App. 3d 1074, 1076 (1999) ("<u>obiter dictum</u> of a court of last resort may be tantamount to a decision and therefore binding in the absence of a contrary decision of that court"). In any event, because the supreme court has explicitly stated that "a probation revocation proceeding is a civil proceeding," we are simply unable to now declare that, for the purposes of Rule 604(f) or for any other purpose, a probation revocation proceeding is a criminal proceeding.

The dissent further asserts that we must follow <u>Grayson</u>. However, as we noted, <u>Lindsey</u> expressly determined that <u>Grayson</u> did not establish that probation revocation proceedings are criminal, or even "criminal in nature." Thus, we clearly cannot follow <u>Grayson</u> to hold that a probation revocation proceeding is a criminal proceeding.

That said, Lindsey clearly did not overrule Grayson, instead deeming it "narrowly tailored to the facts of that case." Lindsey, 199 Ill. 2d at 466. As a result, we accept the viability of the holding in Grayson, i.e., that in a probation revocation proceeding (despite its civil nature), the State is precluded from seeking a revocation on the basis of an offense of which the defendant has been acquitted.[1] Thus, in this case, we would be bound to follow that holding, if only we had jurisdiction to do so. Unfortunately, although Grayson and this case are similar factually, they differ procedurally. The Grayson court had jurisdiction because the defendant appealed the revocation of his probation. As we noted, Rule 604(b) expressly authorizes an appeal from such an order. Accordingly, if defendant here had appealed the revocation of his probation, we would be vested with jurisdiction under Rule 604(b), and we would resolve the appeal in light of Grayson. However, defendant appealed the denial of his motion to dismiss a petition to revoke his probation. Rule 604(b) does not authorize an appeal from such an order, so defendant seeks to appeal under Rule 604(f). But that rule applies only in "a criminal proceeding," and Lindsey, despite Grayson, deemed a probation revocation proceeding a civil proceeding. Thus, once again, we lack jurisdiction over this appeal.

Finally, the dissent asserts that we have failed to address the practical implications of our holding. We do not necessarily disagree with the dissent's concerns in this regard. However, our holding is simply in accordance with the supreme court's holding. If that court chooses to alter its holding, for the reasons urged by the dissent or for any other reason, we of course will follow suit.

---

[1] We note that, 10 years before Lindsey, the supreme court itself questioned the viability of that holding. See In re Nau, 153 Ill. 2d 406, 427-28 (1992). Again, however, that court has not overruled Grayson, and we cannot do so on our own.

But until then, no matter how unwise one might deem it, we have no authority to disregard an express holding of the supreme court.

For these reasons, we dismiss the appeal from the circuit court of Du Page County.

Appeal dismissed.

BYRNE, J., concurs.

JUSTICE McLAREN, dissenting:

I agree that an appellate court has a duty to determine if it has jurisdiction of an appeal. However, I disagree as to the manner of inquiry, the questions propounded, and the incorrect interpretation and application of precedent by the majority. I believe that we have jurisdiction over this appeal and that we should have addressed the merits of the appeal on the grounds of former (double) jeopardy. I will explain my conclusions later in this dissent, after first presenting a discussion of the doctrine of legal precedent. Without a correct understanding of legal precedent, the reader will not fully comprehend why or how the majority has so substantially erred.

## THE DOCTRINE OF LEGAL PRECEDENT

The doctrine of precedent can be a small dragon (easily tamed and utilized) or a large dragon (ferocious and difficult to subdue).[2] If the facts are identical with or reasonably similar to those in the compared case, it is deemed a small dragon and the precedent is

---

[2] This metaphor is inspired by Holmes' apothegm: "When you get the dragon out of his cave on to the plain and in the daylight, you can count his teeth and claws, and see just what is his strength. But to get him out is only the first step. The next is either to kill him, or tame him and make him a useful animal." Holmes, The Path of the Law, 10 Harv. L. Rev. 457, 469 (1897).

recognized as legitimate and applied.  But if the material facts in the compared case do not

run on all fours with the putative precedent it can be a ferocious dragon.  Wrestling with this

dragon can be the most difficult and ferocious job in the judging business.  R. Aldisert, The

Judicial Process 313 (2d ed. 1996).

Justice Aldisert defined precedent as follows:

" 'A judicial precedent attaches a specific legal consequence to a

detailed set

of facts in an adjudged case or judicial decision, which is then considered as

furnishing

the rule for the determination of a subsequent case involving identical or

similar

material facts and arising in the same court or a lower court in the judicial

hierarchy.' [Allegheny General Hospital v.  National Labor Relations Board,

608 F.2d 965, 969-970 (3rd Cir. 1979).]

Chief Justice Marshall expressed the reason for this definition in 1821.

'It is a maxim not to be disregarded, that general expressions, in every

opinion,

are to be taken in connection with the case in which those expressions are

used.  If

they go beyond the case, they may be respected, but ought not to control the

judgment

in a subsequent suit when the very point is presented for decision.  The

reason of this maxim is obvious.  The question actually before the Court is

investigated with care, and considered in its full extent.  Other principles,

which may serve to illustrate it, are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated.' [Cohens v. Virginia, 19 U.S. (6 Wheat.) 264, 399-400, 5 L. Ed. 257, 290 (1821).]"  R. Aldisert, The Judicial Process 314.

Stare decisis is the doctrine of the courts to stand by precedent.  The expression stare decisis is but an abbreviation of stare decisis et non quieta movere (to stand by or adhere to decisions and not disturb that which is settled).  Consider these words.  First, decisis.  This word means, literally and legally, the decision.  The doctrine is not stare dictis.  It is not "to stand by or keep to what was said."  The doctrine is not stare ratio decidendi or "keep to the reason for deciding of past cases." Rather a case is important only for what it decides: for "the what," not for "the why," and not for "the how."  It is important only for the decision, for the detailed legal consequences following a detailed set of facts.  Thus, stare decisis means what the court did, not what it said.

Strictly speaking, the later court is not bound by the statement of reasons or dictis set forth in the rationale.  We know this because a decision may still be vital although the original reasons for supporting it may have changed drastically or been proved terribly fallacious.  The essence of common-law precedent is, therefore, twofold: (1) the rule or holding of the case has the force of law; and (2) the decision constitutes the rule in subsequent cases containing material facts similar to or identical with those in the case. Precedent simply means that like cases should be treated alike.  Stare decisis requires that the holding of a  case with facts sufficiently similar to the case at issue be applied by courts of equal or lesser position in the hierarchy within the same jurisdiction.  R. Aldisert, The Judicial Process 314-16.

No. 2--04--1239

The above insights are consistent with the law of this jurisdiction.  See *Schusse v. Pace Suburban Bus Division of the Regional Transportation Authority*, 334 Ill. App. 3d 960, 965 2002 .  This court is bound to follow the <u>decisions</u> of our supreme court.  <u>Prairie Eye Center, Ltd. v. Butler</u>, 305 Ill. App. 3d 442, 448 (1999).  *However, a judicial opinion must be read as applicable only to the facts involved, and it is an authority <u>only for what is actually decided</u>. People v. Flatt, 82 Ill. 2d 250, 261 1980 .  It is well settled that the <u>precedential scope of a decision is limited to the facts before the court</u>. People v. Allen, 351 Ill. App. 3d 599, 606 2004 .*

*As will be explained, the majority, through faulty research, logic, and reason, finds legal precedent where it does not exist.*

## INQUIRY INTO APPELLATE JURISDICTION

*When the majority inquired into our jurisdiction to consider this matter, it correctly reviewed the supreme court rule referenced by defendant as the basis for jurisdiction*

"The defendant may appeal to the Appellate Court the denial of a motion to dismiss a criminal proceeding on grounds of former jeopardy."  Official Reports Advance Sheet No. 4 (February 16, 2005), R. 604(f), eff. February 1, 2005.

The appropriate inquiry into jurisdiction should have been twofold: first, does the point of law  to be decided concern the denial of a motion to dismiss on the ground of former (double) jeopardy?  (Yes, it is the exact point of law raised by defendant, and this point is uncontested.)  Second, is this a criminal proceeding in the context of the operative facts in this case?  (The majority determines it is a civil proceeding.  I disagree.)

However, the majority formulated the question as follows:

"At issue in this case is whether a probation revocation proceeding is a 'criminal proceeding' as that term is used in Rule 604(f)."  Slip op. at 3.

˘11˘

The majority then found two cases that contained words, "dictis," describing a probation revocation hearing as either civil or criminal. People v. Grayson, 58 Ill. 2d 260, 265 (1974), labeled the proceeding as "criminal"; People v. Lindsey, 199 Ill. 2d 460, 467 (2002), labeled it as "civil." The majority, in referencing Lindsey, said, "Our supreme court, without any limitation, determined that a probation revocation proceeding is a civil proceeding." Slip op. at 4, quoting Lindsey, 199 Ill. 2d at 467. The majority further characterized that quote from Lindsey as "the court's explicit holding." Slip op. at 6. The majority then determined that, between the two cases, the better choice was Lindsey. Having chosen Lindsey as controlling, the majority then determined that it was bound to follow the law in Lindsey and that there was no jurisdiction, because Rule 604(f) allowed appeals only from criminal proceedings. In the words of the majority, "we are simply unable to now declare that, for the purposes of Rule 604(f) or for any other purpose, a probation revocation proceeding is a criminal proceeding." Slip op. at 6.

However, the majority left out several necessary steps in properly analyzing the issue of jurisdiction. First, the question propounded by the majority conclusively presumes that a probation revocation hearing can be only civil or only criminal, rather than asking whether a probation revocation proceeding can be a civil proceeding or a criminal proceeding or both, depending upon the operative facts involved. From this question, it logically follows that, if the supreme court did not commit error in Grayson or Lindsey, then they both must be correct. If both cases are correct, then they may be easily reconciled and distinguished by pointing out that the operative facts and the legal issues decided are substantially different. It is not what the supreme court said, the "dictis," or the underlying rationale, the ratio decidendi," but the decision, "decisis," that is important. There can be no conflict between these two cases and, thus, a probation revocation hearing may be either a civil proceeding or a criminal proceeding, depending upon the operative facts and the point of law in issue.

Second, by declaring that Lindsey was the controlling precedent, the majority was required to consider and apply the two elements of legal precedent. See slip op. at 8-9. If the majority had properly considered

the two elements, it should have concluded that the point of law decided in _Lindsey_ was not the point of law decided in this case. _Lindsey_ held that the defendant's right against self-incrimination pursuant to article I, section 10, of the Illinois Constitution was not violated by calling him to testify as an adverse witness at his probation revocation hearing concerning noncriminal violations of probation.[3] See _Lindsey_, 199 Ill. 2d at 471. Here, the majority decides that we do not have jurisdiction to determine if the operative facts of this case would entitle defendant to dismissal of the petition to revoke probation on the basis of former jeopardy, a criminal concept.

Notwithstanding the substantial differences in the actual decisions in _Grayson_, _Lindsey_, and the majority decision herein, the _operative facts_ are not the same or similar enough to justify a determination that the decision in _Grayson_ or _Lindsey_ is precedential to decide the issue of jurisdiction under Rule 604(f), let alone Rule 604 or 301 (155 Ill. 2d R. 301). In other words, the _dicta_, the labels "civil" and "criminal" in _Grayson_ and _Lindsey_, were _not_ the decisions in those cases but were merely the "why." Furthermore, "dicta" is obviously contextual rather than absolute (i.e., having no restriction, exception, or qualification). In

---

[3] Lindsey involved three decisions, not one of which was whether the proceeding was criminal or civil. The analysis in Lindsey was divided into three discrete sections: "The Privilege Against Self-Incrimination"; "Due Process"; and "Day-for-Day Credit."

the context of Rule 604 f , 604, or 301, these terms have no legal significance for purposes of legal precedent.

Concomitantly, the majority fails to understand that the entire prosecution of a criminal offense from charge to final judgment may be a dichotomy. The majority fails to accept that, depending upon the particular step or issue to be resolved in the proceeding, the label can and does easily change. If the majority s absolutist view is correct, then Lindsey reversed Grayson, because, as the majority has determined, probation revocation proceedings cannot have different  labels,  depending upon the context but must be, without qualification, civil proceedings. Thus, applying the majority s logic, Grayson is no longer the law. It has been overruled by Lindsey, because double jeopardy cannot arise in a  civil  probation revocation hearing.

The majority states,  Unfortunately, although Grayson and this case are similar factually, they differ procedurally. The Grayson court had jurisdiction because the defendant appealed the revocation of his probation. As we noted, Rule 604 b  expressly authorizes an appeal from such an order.  Slip op. at 7. The majority then fails to explain how Grayson was properly appealed.  The supreme court never stated how it obtained jurisdiction  i.e., whether it was pursuant to Rule 604 b  or Rule 301 . In addition, the majority fails to explain how Rule 604 b , a rule of criminal appellate procedure, can apply to a civil proceeding. If the majority truly means what it says  we are simply unable to now declare that, for the purposes of Rule 604 f  or for any other purpose, a probation revocation proceeding is a criminal proceeding  emphasis added  slip op. at 6  , then it must explain how an appeal from a final judgment of a  civil proceeding  is appealable under Rule 604 b , a rule of criminal appellate procedure. Either the majority is incorrect  as well as inconsistent , or Rule 604 b  should be moved to the rules of civil appellate procedure and renumbered. Either the majority is refusing to recognize the dichotomy between rules of civil and criminal appellate procedure or it is failing to accept the basic premise of this dissent, that applying labels out of context with the operative facts of a prior decision often leads, and in this case does lead, to  at best  inconsistent or  at worst  absurd conclusions.

Furthermore, the majority fails to address the implications of holding that a probation revocation proceeding is, without qualification, a civil proceeding in other areas not related to the issue of jurisdiction. Our supreme court recently addressed the application of the Code of Civil Procedure to the procedures to rescind a statutory summary suspension. In People v. McClure, 218 Ill. 2d 375 (2006), the defendant withdrew his petition to rescind his statutory summary suspension and refiled it some seven months later, asserting that the withdrawal was tantamount to a voluntary dismissal under section 13--217 of the Code of Civil Procedure (735 ILCS 5/13--217 (West 2002)), which would allow him one year to refile the petition. See McClure, 218 Ill. 2d at 378. The court noted that section 2--118.1(b) of the Vehicle Code specifically provided that hearings on petitions to rescind "shall proceed in the court in the same manner as in other civil proceedings." McClure, 218 Ill. 2d at 380, quoting 625 ILCS 5/2--118.1(b) (West 2002). The court then concluded that "nothing in the language of the statute suggests that the legislature intended _the application of some rules and not others_." (Emphasis added.) McClure, 218 Ill. 2d at 383-84. Thus, the defendant was allowed to refile his petition, as all rules of civil procedure were applicable.

The Civil Practice Law (735 ILCS 5/2--101 _et seq._ (West 2004)) applies not only in all proceedings specifically covered in the Code of Civil Procedure but also

In proceedings in which the procedure is regulated by statutes other than those contained in this Act[ ] such other statutes control to the extent to which they regulate procedure but Article II of this Act[ the Civil Practice Law] applies to matters of procedure not regulated by such other statutes." 735 ILCS 5/1--108(b) (West 2004).

If probation revocation proceedings are unqualifiedly civil proceedings, as the majority holds, then the Civil Practice Law _must_ apply to all procedures not specifically covered by some other statute. I am aware of nothing that intends the application of some, and not other, rules of civil procedure. Section 5--6--4 of the Unified Code of Corrections (730 ILCS 5/5--6--4 (West 2004)) governs probation revocation

proceedings. However, nowhere does section 5--6--4 address the issue of discovery prior to a revocation hearing. Thus, since the Civil Practice Law applies to matters not otherwise regulated, the full panoply of civil discovery must be available to both parties. Civil motions to dismiss and for summary judgment must also be available. Likewise, section 5--6--4 g merely states that a judgment revoking probation is a final and appealable order since this is a civil proceeding, both parties may appeal pursuant to Supreme Court Rules 301, 304, and 308 155 Ill. 2d Rs. 301, 304, 308 and Rules 306 and 307 166 Ill. 2d Rs. 306, 307 .

One must also question the trial court s authority to appoint the public defender or the appellate defender in such a matter. The public defender shall act as attorney, for all persons who are held in custody or who are charged with the commission of any criminal offense, and who the court finds are unable to employ counsel 55 ILCS 5 3--4006 West 2004 , and the appellate defender shall be appointed as counsel i n any case wherein the defendant was convicted of a felony 725 ILCS 5 12--13 a West 2004 . I note that neither the public defender nor the appellate defender would have authority to appear in this civil proceeding.

I submit that the dichotomy exists and is evident in part by the fact that the defendants in Lindsey and Grayson were both represented by a public defender and by an appellate defender, without explanation, discussion, or rationalization by either the appellate or the supreme court. It is fascinating to note that in Grayson, the criminal label is consistent with the appointment of counsel and the right to be free from former jeopardy, whereas in Lindsey, the civil label would imply that the appointment of counsel was improper. I submit the silence is deafening.

The majority fails to recognize that a dichotomy exists and fails to consider the possibility that neither Grayson nor Lindsey is precedential. Had the majority realized that neither case is precedential, it should then have considered the two cases as merely persuasive authority upon which the majority could develop new law and apply a label as it had been done previously, in context and with qualification. As Chief Justice Marshall

*stated,* "their possible bearing [of general expressions] on all other cases is seldom completely investigated." Cohens, 19 U.S. (6 Wheat.) at 400, 5 L. Ed. at 290. In Lindsey, the internal inconsistency in the opinion, as it might affect the same opinion (let alone all other cases), was neither investigated nor commented upon.

*Assuming, arguendo, that the majority is correct, then I would suggest that* People v. Hall, 198 Ill. 2d 173 2001), is at odds with the majority's analysis that the label in Lindsey is precedential and that a probation revocation hearing is either civil or criminal without qualification. "In People v. Hall [citation], the supreme court held that to comport with due process a defendant at a probation revocation hearing must be advised of various rights he is giving up if he enters an admission to the allegations of the petition as well as a factual basis for the violation." People v. Lipscomb, 332 Ill. App. 3d 322, 325-26 (2002). Hall is cited as the foundation for Supreme Court Rule 402 (177 Ill. 2d R. 402). Said rule provides for numerous elements that relate to satisfying due process during a probation revocation hearing. Nowhere in Hall can one find the word "civil" or the phrase "civil proceeding" or "criminal proceeding." The word "criminal" appears once in the opinion as follows: "Probation revocation proceedings occur only after a criminal conviction, and a defendant responding to a petition to revoke probation is entitled to fewer procedural rights than a defendant facing trial." Hall, 198 Ill. 2d at 177. *Assuming that the majority s analysis is correct, then the following issues arise. If the majority is correct that a label, such as civil or criminal, is precedential and constitutes the decision in a case, then it would appear that there was no decision entered in* Hall, *because there was never a label ascribed to the proceedings. Indeed, the word civil and the phrase civil proceeding, as well as any type of characterization other than probation revocation hearing, are absent. Considering that the* Hall *decision is credited with formulating the elements contained in Rule 402, it is unreasonable to conclude that* Hall *was not a decision. In other words, if the label is the decision rather than merely the rationale to explain the*

*decision, there was no decision in* **H***all.* **I***f the* <u>decisis</u> *is the label, and there is no label, there can not be a* <u>decisis</u>. **T***he majority began its inquiry into jurisdiction by presuming that a revocation proceeding had to be either a civil or a criminal proceeding.* **I***t never considered that it could be either or both depending upon the context.* **C***ontrary to the majority s false premise that began its analysis,* **H***all clearly establishes that the nature of the proceeding is immaterial and that it is the demands of the particular legal context of a case that are controlling.* **S***ee* <u>Hall</u>, 198 Ill. 2d at 177.

Had the majority properly considered the two cases as merely persuasive, it should have determined that, between the two cases, <u>Grayson</u> is more closely related to this case. Both <u>Grayson</u> and this case are concerned with a motion to dismiss the proceedings based upon former jeopardy. In that regard, the supreme court determined that a probation revocation proceeding was a criminal proceeding, which is consistent with the appointment of counsel and the language contained in Rule 604(f). Considering that the rule allows for an appeal from a denial of a motion to dismiss because of double jeopardy, that <u>Grayson</u> determined that double jeopardy is involved in probation revocation hearings, and that the label to be applied to such motions to dismiss is "criminal," I submit that <u>Grayson</u> is more persuasive than <u>Lindsey</u> as to what is meant in Rule 604(f) regarding the term "criminal." If former jeopardy is a principle of criminal law and it is germane to a probation revocation hearing, as determined in <u>Grayson</u>, then it logically follows that (in this context) the hearing is a criminal proceeding and is within the ambit of Rule 604(f). <u>Lindsey</u> has only one fact in common with this case--the proceeding was a probation revocation hearing. Based upon the similarities between <u>Grayson</u> and this case, the majority could readily determine that we have jurisdiction and address the merits of this appeal, pursuant to <u>Grayson</u>.

Finally, the majority improperly interprets <u>People v. Snell</u>, **357 I***ll.* **A***pp.* **3***d* **491 2005** . **T***he majority states*

˘18˘

*In Snell, a case factually similar to this case, the reviewing court indicated that the defendant appealed pursuant to Rule 604 f after the trial court revoked his probation and before it sentenced him. Snell, 357 Ill. App. 3d at 493.* Although the reviewing court never addressed whether Rule 604(f) vested it with jurisdiction over the defendant's appeal, we believe that jurisdiction in Snell lay under Supreme Court Rule 604(b), not Rule 604(f), because the defendant appealed after the trial court revoked his probation. See Official Reports Advance Sheet No. 4 (February 16, 2005), R. 604(b), eff. February 1, 2005 (stating that a defendant may appeal an order revoking probation); 730 ILCS 5/5--6--4(g) (West 2002) (providing that a judgment revoking a defendant's probation is a final appealable order). As the trial court here has not ruled on the petition to revoke defendant's probation, we cannot exercise jurisdiction over defendant's appeal pursuant to Rule 604(b). *Slip op. at 6.*

I submit that the majority s reasoning is faulty. Although the trial court in Snell had revoked the defendant s probation, it had not sentenced the defendant. Therefore, the judgment was not final and appealable, as the sentence is deemed the final act of judgment. Final judgment in a criminal case is not entered until the imposition of the sentence  the final judgment in a criminal case is the sentence. People v. Warship, 59 Ill. 2d 125, 130 1974 . The majority has misinterpreted section 5--6--4 g  to mean that a revocation is final and appealable despite the lack of a sentence entered subsequent to the revocation. Such is not the case. Section 5--6--4 g  is not controlling. I submit that Snell is the best precedent, as it is the most similar to the operative facts in this case, and that the Snell court allowed an appeal under Rule 604 f , although without analysis. Again the majority fails to recognize that, if this were truly the  civil  proceeding that the majority determines, then it should conclude that the right to appeal is not based upon Rule 604 b  or 604 f  or section 5--6--4 g , but upon Supreme Court Rule 301. If the majority s analysis were consistent, it would determine that this is a civil proceeding that is subject to rules of civil appellate procedure.

The majority is unconcerned that it is treating all other final and nonfinal orders as criminal but is not treating this particular order as criminal. I am unaware of any statute, rule, or legal precedent that has declared, stated, ruled, or decided that an interlocutory order is subject to the rules of appellate procedure opposite civil vis-a-vis criminal from the rules applied to final judgments from the same proceeding. Considering (1) the context of two rules of criminal appellate procedure that authorize appeals from criminal proceedings Rules 604(b) and 604(f) (2) a statute that places the appeal in the same perspective and (3) a lack of case law and supreme court rules that remotely reference probation revocation hearings in a civil context, one wonders on what basis there is any inference that appeals from probation revocation hearings are subject to the rules of civil appellate procedure. The dearth of cases would suggest the contrary. I submit that rules of criminal appellate procedure relate to criminal prosecutions, including probation revocation hearings. Further, if there were a label for probation revocation hearings, it ought be that they are criminal proceedings. Such a label would not do violence to anything other than the misapprehension that a criminal prosecution has distinct and absolute elements, depending upon the stage of the proceeding. Assuming that the majority is correct and that

we are simply unable to now declare that, for the purposes of Rule 604(f) or for any other purpose, a probation revocation proceeding is a criminal proceeding" (emphasis added) (slip op. at 6), then I anxiously await an appeal, pursuant to Supreme Court Rule 308, wherein the certified questions are (1) whether or not the public defender should be representing the defendant in a probation revocation hearing (2) if not, should private counsel be appointed to represent the defendant with the cost of such representation to be paid by the State, the county, or some other governmental agency and (3) whether the appellate defender should be representing the defendant on appeal.

In conclusion, I would determine that Lindsey is neither precedential nor persuasive and that Grayson, Snell, and the scheme and structure of the rules of criminal appellate procedure are persuasive as to the issue of jurisdiction under Rule 604(f). Justice Fitzgerald aptly stated that "fairness, the core meaning of our due process guarantees see U.S. Const., amend. XIV Ill. Const. 1970, art. I, §2, is a flexible concept

which calls for procedural safeguards tailored to the demands of a particular legal context. _Hall_, 198 Ill. 2d at 177 where failure to advise the defendant of his due process rights at a probation revocation hearing required reversal . According to the demands of the particular legal context of this case, I believe that a defendant s right to an interlocutory appeal based on due process rights that were deemed applicable to criminal proceedings in _Grayson_, along with the precedent in _Snell_, enables this court to entertain and rule upon the merits of this appeal.

Therefore, I respectfully dissent.